UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MINDEN PICTURES, INC.,

    Plaintiff,

    v.

JOHN WILEY & SONS, INC.,

    Defendant.

No. C-12-4601 EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**(Docket No. 31)**

## I. INTRODUCTION

In this action, Plaintiff, a stock photography agency, brings suit against Defendant, an educational publisher, alleging that Defendant has exceeded usage restrictions in photograph licensing agreements, and bringing claims for copyright infringement. Pending before the Court is Defendant's motion to dismiss this action for lack of jurisdiction under Rule 12(b)(1). In another action filed by Plaintiff on similar grounds against a different educational publisher, Judge Alsup recently granted summary judgment, finding that Plaintiff lacked standing to sue under the Copyright Act because it did not have the necessary ownership interest in the photographs that were allegedly infringed. Defendant contends that given the overlap of photographers involved in the two actions and the similarity in the underlying contracts between Plaintiff and the photographers, Judge Alsup's decision has collateral estoppel effect on the question of Plaintiff's standing to bring suit in this case. Plaintiff opposes, arguing that since Judge Alsup declined to consider one set of relevant contracts – the original agency agreements between Plaintiff and the photographers – as a sanction for discovery abuses, the effect of those contracts was not fully litigated in that case. Plaintiff

1 additionally argues that it has standing based on a recently executed set of agreements with the
2 photographers whose work was allegedly infringed.

3 At the May 9, 2013 hearing on this matter, the parties agreed that in order to properly address
4 the effect of the agency agreements between Plaintiff and the various photographers, they wished to
5 take additional discovery and file cross motions for summary judgment addressing whether these
6 agreements confer standing to bring suit under the Copyright Act. The Court thus **DENIES**
7 Defendant's motion without prejudice as to the effect of the agency agreements, and rules as follows
8 on the remaining issues raised by Defendant's motion.

## II. LEGAL, FACTUAL & PROCEDURAL BACKGROUND

Plaintiff is a stock photography agency that licences photographs to publishers, including Defendant. Compl. ¶ 2. Plaintiff acts as an agent for the photographers who created the images. Declaration of Richard L. Minden ("Minden Decl.") ¶ 3 (Docket No. 39). Plaintiff licensed various photographs to Defendant, using licensing agreements that placed limits on the number of reproductions, distribution area, language, duration, and/or media in which Defendant was permitted to reproduce the images. Compl. ¶ 8. In the instant suit, Plaintiff brings claims of copyright infringement, alleging that Defendant has exceeded the limits of in the licensing agreements and used the photographs for unlicensed purposes. Compl. ¶¶ 13-15, 27-35. Plaintiff also alleges that Defendant transmitted the photographs to unlicensed third parties with the knowledge that those parties intended to use the photographs without authorization. Compl. ¶ 20-23.

Plaintiff attaches to the complaint copies of 228 images by 36 photographers that it alleges were the subject of Defendant's infringement. Compl. ¶¶ 8, 13, Ex. 1; Declaration of Robert W. Crockett ("Crockett Decl.") ¶ 2 (Docket No. 40.).

A. <u>Standing Under the Copyright Act</u>

Under the Copyright Act,

> The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an

action for any infringement of that particular right committed while he or she is the owner of it.[1]

17 U.S.C. § 501. In order to "be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (internal quotation marks omitted).

The Copyright Act provides an exhaustive list of six "exclusive rights" held by copyright owners:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106; *see also Silvers*, 402 F.3d at 886-87 (recognizing that this list is exhaustive). The various exclusive rights provided for under this section may be transferred and owned separately. *Id.* § 201(d).

Since the right to bring suit for an accrued claim is not one of the "exclusive rights" identified in § 106, the Ninth Circuit has held that a person may not bring suit for copyright infringement where they own only the "bare right to sue," but do not own any of the exclusive rights

---

[1] Section 411 sets out requirements concerning pre-registration of copyrights prior to the initiation of legal action. 17 U.S.C. § 411.

1 provided for in § 106. *Silvers*, 402 F.3d at 885-86. Whether an agreement conveys any of the
2 exclusive rights under the Copyright Act or merely a bare right to sue is determined by looking at
3 the substance of an agreement, and not just the label put on the agreement. *Nafal v. Carter*, 540 F.
4 Supp. 2d 1128, 1142 (C.D. Cal. 2007) *aff'd*, 388 F. App'x 721 (9th Cir. 2010). While two or more
5 parties can be co-owners of certain rights, where they do not have "an independent and equivalent
6 power to exercise [their] rights" courts have concluded that there is not a true ownership interest. *Id.*
7 If an assignment does not actually grant an ownership interest, but is instead a "disguised
8 assignment of a cause of action," the assignee will lack standing to bring suit under the Copyright
9 Act. *Nafal v. Carter*, 388 F. App'x 721, 723 (9th Cir. 2010).

B. <u>Agency Agreements</u>

Prior to licensing photographs to publishers, Plaintiff enters into agency agreements with the photographers who created the images, or the photographers' representatives. Minden Decl. ¶ 3. Plaintiff argues that under these agreements, photographers assign to Plaintiff three of the exclusive rights recognized under § 106. As the Court is deferring ruling on the effect of these agreements, no detailed summary of their contents is necessary here. In short, though the various agency agreements differ in some respects, they generally provide that Plaintiff is authorized to license the photographer's photographs to third parties within certain parameters and subject to certain exceptions or limitations. Minden Decl. Ex. 1.

C. <u>Copyright Assignments</u>

Plaintiff also claims standing to sue based on copyright assignment agreements executed with the photographers prior to filing the instant suit. Pl.'s Opp. at 4-5. These agreements appear to have been largely executed with the various photographers between 2010 and 2012.[2] Minden Decl. Ex. 2. The majority of these contracts are identical, and read:

---

[2] The only exception to this time frame is the copyright assignment pertaining to photographers Patricia and Michael Fogden. Docket No. 39-10 at 27. Michael Fogden signed the agreement in February 2010, but Patricia Fogden did not sign the agreement until March 29, 2013. *Id.*

> <u>Copyright Assignment, Accrued Causes of Action, and Litigation Agreement</u>
>
> The undersigned, the sole owner of the copyrights in the undersigned's images ('the Images') selected by Minden Pictures, Inc. ('Agency') and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.
>
> Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

Minden Decl. Ex. 2.

Plaintiff has not submitted copyright assignments for one of the photographers whose images are at issue in this suit, Pete Oxford. Additionally, three of the photographers involved with this suit executed copyright assignments that were limited to actions brought against Houghton Mifflin Publishing Company. Minden Decl. Ex. 2 at 5, 14, 31. It would thus appear that Plaintiff has not provided copyright assignments that are applicable to this lawsuit for four of the photographers.

D. *Minden Pictures v. Pearson*

In November 2011, Plaintiff filed suit against Pearson Education, Inc., alleging copyright infringement on similar grounds to those asserted in this suit. *Minden Pictures, Inc. v. Pearson Educ., Inc.*, C11-5385, Docket No. 1 ("*Pearson*"). This action involved photographs by 133 photographers, 32 of whom are involved in this case. Crockett Decl. ¶ 2. There are four photographers involved in this case whose photographs were not included in the *Pearson* action. *Id.* While Plaintiff points out the fact that not all photographers involved in this action were involved in the *Pearson* case, it does not specifically identify the photographers, or argue that these photographers had agency agreements or copyright assignments that varied from the other photographers in any meaningful way. Pl.'s Opp. at 6 n.17.

///

///

On March 5, 2013, Judge Alsup granted summary judgment for the defendant in *Pearson*, holding that Plaintiff did not have standing to sue under the Copyright Act.[3] *Minden Pictures, Inc. v. Pearson Educ., Inc.*, ___ F. Supp. 2d ___, C 11-05385 WHA, 2013 WL 812412 (N.D. Cal. Mar. 5, 2013). Plaintiff had argued there, as it does here, that it had standing based on both the agency agreements and the copyright assignments. *Id.* at *1.

Judge Alsup found that Plaintiff was precluded from relying on the agency agreements to establish standing because it had been delinquent in producing those agreements. *Id.* at *3-4. The court found that there were several times in the litigation where Plaintiff was required to identify or produce the agency agreements—including in response to an order of the court to attach to the second amended complaint all agreements relevant to Plaintiff's standing to sue—but that Plaintiff had failed to do so. *Id.* Judge Alsup specifically rejected Plaintiff's argument that it had initially failed to appreciate the relevance of the agreements, finding that internal correspondence indicated that Plaintiff understood the significance of the agency agreements but had "made a strategic choice at the outset of this litigation not to disclose the agency agreements and instead to rely solely on the assignment agreements." *Id.* at *4. Given Plaintiff's "multiple violations of the Court's orders and the discovery rules," Judge Alsup found that "a lesser remedy than preclusion would not be appropriate" and struck the agency agreements from the record. *Id.* at *4-5.

Judge Alsup then turned to the copyright assignments, and found that under *Silvers* and *Nafal*, these agreements "simply disguise an assignment of a bare right to sue." *Id.* at *5. The court noted that the assignments conveyed no right to royalties outside of the litigation, and that the purported ownership of the photographs reverted back to the photographer immediately upon the termination of the litigation. *Id.* at *6. The court found that the copyright assignments were substantially similar to the sham assignments rejected by the court in *Nafal*, and that when "viewed

---

[3] Plaintiff also notes that Judge Alsup had earlier denied a motion to dismiss that was based in part on the argument that Plaintiff lacked standing under the Copyright Act. Pl.'s Opp. at 6-7. In that order, Judge Alsup concluded that Plaintiff had alleged sufficient facts to find that it had standing to sue. Crockett Decl. Ex. 5 at 5. There is no discussion of the effect of any of the agreements relevant to the instant motion. *Id.* In any case, as this was not a final determination of that action, this order cannot be the basis for collateral estoppel, and is irrelevant to the instant motion.

as a whole, the clear and unambiguous intent of the parties was to assign to Minden the bare right to sue." *Id.*

The court also considered parole evidence offered by both parties on the meaning of the copyright assignments. Plaintiff had submitted declarations from a subset of involved photographers stating that each "intended to make 'whatever assignments are necessary to accomplish [the] purpose' of 'pursuing this action against Pearson for its infringements of images licensed by Minden Pictures'. . . , and to assign 'whatever rights are necessary to confer standing on Minden Pictures to assert and prosecute copyright infringement claims, including an assignment of co-ownership of the copyrights on the photographs in question.'" *Id.* at *7 (quoting declarations). Considering the declarations, the court found that:

> These statements are clearly doublespeak tainted by the influence of litigation. They do not evince any intent to transfer any specific legal (or beneficial) ownership to Minden. Rather, the objective was to create the mere appearance of standing in this lawsuit. They do not render the copyright assignments reasonably susceptible of the interpretation that they transferred legal title in the underlying copyrights to Minden.

*Id.*

The conclusion that the agreements were intended to merely convey the right to bring suit was further bolstered by evidence submitted by the defendant in the form of emails from Plaintiff's president Larry Minden to individual photographers. In these emails, Mr. Minden asked the photographers to execute the copyright assignments because Plaintiff's counsel was concerned that the agency agreements were insufficient to confer standing. *Id.* He explained the assignments:

> What this amendment does is assign Minden Pictures coownership of copyrights of images we represent solely for actions or lawsuits brought by Minden Pictures to address unauthorized image use by our clients. *My understanding is this is the sole purpose this assignment of co-ownership may be used for.*

*Id.* (quoting email) (emphasis in *Pearson* order). The court found that these emails clearly indicated that the copyright assignments were intended only to convey the right to sue, and not to convey legal title. *Id.*

Finding that both the text of the agreement and the submitted extrinsic evidence indicated that the copyright assignments conveyed only the bare right to sue, the court thus found that Plaintiff

7

1 lacked standing to sue under the Copyright Act, and granted summary judgment in favor of the
2 defendants. *Id.* at *8. The court noted that this decision did not bar the photographers who owned
3 the images from themselves bringing suit for copyright infringement. *Id.* at *9.

4     Plaintiff has appealed the grant of summary decision in *Pearson*.

### E. Subsequent Assignment of Rights

After Judge Alsup's order granting summary judgment in *Pearson*, Plaintiff executed another round of agreements with the photographers whose images are at issue in this suit. Minden Decl. Ex. 3, 3-S. The text of these agreements, which all appear to have been executed after Defendant filed the instant motion, is generally identical:

> <u>Copyright and Accrued Causes of Action Assignment</u>
>
> This agreement memorializes the relationship between the undersigned parties and governs all photographic images authored by the undersigned photographer ("Photographer") that have been included in the collection of Minden Pictures, Inc. ("Minden") and licensed by Minden to John Wiley & Sons, Inc. ("Wiley"), including those to which Photographer holds the copyrights and those to which co-ownership of the copyrights was previously assigned to Minden ("the Images").
>
> Photographer hereby assigns to Minden co-ownership of the copyrights in the Images not previously assigned to Minden. Minden hereby assigns to Photographer co-ownership of the copyrights in the Images previously assigned to Minden. These assignments are intended to vest in both parties a co-ownership interest in the copyrights to the Images. These assignments include the right of both parties to authorize the reproduction of the Images in copies and the right to authorize the distribution and display of copies of the Images to the public, and affirms Photographer's prior assignment of these rights to Minden effective the date the Images were included in Minden's collection.
>
> Photographer assigns to Minden all rights, title and interest in any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits brought against Wiley to enforce copyrights in the Images. This assignment authorizes Minden, in its sole discretion, to present, litigate and settle any claims against Wiley relating to unauthorized uses of the Images.
>
> Any proceeds obtained by settlement or judgment for said claims shall, after deducting costs, expenses of litigation and attorneys' fees, be divided as provided in Photographer's agency agreement with Minden.

8

Minden Decl. Ex. 3 at 2 of 34.[4] These assignment agreements, however, are missing for four of the photographers: Richard L. Minden, Anup Shah, Eddy Marissen, and Aad Schenck. Minden Decl. Ex. 3.

### III. DISCUSSION

A motion to dismiss brought under Rule 12(b)(1) may be granted where the court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). Thus, Rule 12(b)(1) is the appropriate vehicle for dismissing a claim where the plaintiff lacks standing to sue under the Copyright Act. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). Once the moving party has asserted lack of subject matter jurisdiction, the burden is on the party asserting jurisdiction; the court will presume that there is no jurisdiction until proved otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Id.* at 1139.

A.  Collateral Estoppel Effect of *Minden Pictures v. Pearson*

Defendant argues that Plaintiff is collaterally estopped from asserting standing under the Copyright Act because Judge Alsup's order in *Pearson* determined that the agency agreements and copyright assignments were not sufficient to confer standing. Def.'s Mot. at 7-9.

> Issue preclusion prevents a party from relitigating an issue decided in a previous action if four requirements are met:
>
> (1) there was a full and fair opportunity to litigate the issue in the previous action;
>
> (2) the issue was actually litigated in that action;
>
> (3) the issue was lost as a result of a final judgment in that action; and
>
> (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

---

[4] The agreement for photographer Carr Clifton varies from this standard template in ways that are ultimately irrelevant to this Court's analysis on this motion. *See* Minden Decl. Ex. 3 at 3 of 34.

9

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008). Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). In discussing the effect of collateral estoppel, the Ninth Circuit has recognized that "once an issue is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (emphasis in original) (quoting *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir.1992)), *opinion amended on other grounds*, *Kamilche v. United States*, 75 F.3d 1391 (9th Cir. 1996).

Federal courts permit non-mutual collateral estoppel, also known as defensive collateral estoppel, which "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Id.* at 326 n.4. Thus, "[f]indings made in one proceeding in which a party has had a full and fair opportunity to litigate may be used against that party in subsequent litigation." *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996).

1. Collateral Estoppel Effect as to Copyright Assignments

Plaintiff does not appear to contest the collateral estoppel effect of the *Pearson* decision as to the interpretation of the copyright assignments. Pl.'s Opp. at 12. In any case, all of the requirements of collateral estoppel appear to be met. Plaintiff was a party in *Pearson*, it had a full and fair opportunity to litigate the effect of the copyright assignments, it did in fact present its arguments on this issue, and the order granting summary judgment was a final judgment on the merits. The only possible argument against the full application of collateral estoppel here (which Plaintiff does not explicitly raise), is that according to the parties there are four (unidentified) photographers whose work is the subject of the alleged infringement here whose work was not implicated in *Pearson*. Since these four photographers have copyright assignments that are verbatim identical to the assignments signed by the photographers in *Pearson*, however, the issue here is identical, and this Court finds that collateral estoppel applies.

In the alternative, even if collateral estoppel does not apply as to these four photographers, this Court finds Judge Alsup's reasoning on the effect of these agreements persuasive, and follows *Pearson* in finding that these agreements convey nothing more than a bare right to sue, and thus cannot be the basis for standing under the Copyright Act.

This Court thus finds that Plaintiff may not assert standing to sue based on the copyright assignments it executed with the photographers between 2010 and 2012[5] which are subjects of the instant case.[6]

2. Collateral Estoppel Effect as to Agency Agreements

Plaintiff's main argument against the application of collateral estoppel is that *Pearson* does not preclude consideration of the agency agreements, since their effect was not actually litigated. Pl.'s Opp. at 12. Plaintiff contends that because Judge Alsup struck the agency agreements as a sanction for Plaintiff's discovery misconduct, "the Court did not address Minden's contention that it has standing to sue for copyright infringement for the independent reason that it owned 'exclusive rights' under 17 U.S.C. § 106 at the time of the alleged infringements." Pl.'s Opp. at 12-13.

This Court recognizes that there are cases indicating that collateral estoppel may apply even where the issue was decided against a party in the previous case as a sanction for litigation misconduct. *See In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995); *United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136 (9th Cir.1983). Even where the formal requirements of collateral estoppel are met, however, the Court has discretion to deny application of the doctrine where it deems appropriate in light of the facts of the case. *In re Daily*, 47 F.3d at 368 n.6. In this case, Plaintiff's misconduct in *Pearson* was not sufficiently severe to justify extending the sanction applied in that case here. Particularly given that Defendant asks us to apply non-mutual collateral estoppel here, this Court is concerned about the draconian consequences of forever precluding Plaintiff from bringing suit against any defendant where the suit is based on the same or

---

[5] As noted above, this group of assignments includes the assignment signed by Michael Fogden on February 24, 2010, and by Patricia Fogden on March 29, 2013. Docket No. 39-10 at 27.

[6] Though the *Pearson* decision is currently on appeal, a final judgment retains preclusive effect while appeal is pending. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007).

11

substantially similar agreements to those at issue in *Pearson*. Accordingly, this Court declines to give the *Pearson* decision collateral estoppel effect as to the impact of the agency agreements on Plaintiff's standing to sue under the Copyright Act. As discussed above, the parties have agreed to conduct further discovery related to the agency agreements, and to then file cross motions for summary judgment on the question of whether they confer standing on Plaintiff.

B.     Effect of Subsequent Assignments

Plaintiff argues that even if it is collaterally estopped from asserting standing based on the copyright assignments and agency agreements, it has standing because of the new assignments it obtained in March and April of 2013. Pl.'s Opp. at 18-23; Minden Decl. Ex. 3. Though these assignments were executed after the initiation of this action (and after the filing of the instant motion), Plaintiff argues that it should nonetheless be permitted to cure any deficiency in the assignment of rights and that such assignment should relate back to the date the complaint was filed. Pl.'s Opp. at 20-21.

Whether a plaintiff has standing to file suit is evaluated by looking to "the facts *as they exist when the complaint is filed.*" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (emphasis in original). *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by the facts that exist at the time the complaint is filed."). *See also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (statute permitting amendment of defective allegations of jurisdiction "allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts"); *Righthaven LLC v. Hoehn*, ___ F.3d ___, 11-16751, 2013 WL 1908876 (9th Cir. May 9, 2013) (noting that while there are some limited exceptions to the rule that standing is determined as of the time the complaint is filed, "permitting standing based on a property interest acquired after filing is not one of them").

In a series of cases analogous to the case at bar, a Nevada district court has rejected arguments that a subsequent assignment of copyright can confer standing where the assignment of rights in place at the time the suit was filed had conferred only a bare right to sue. *Righthaven LLC v. Allec*, 2:11-CV-00532-KJD, 2012 WL 909832 (D. Nev. Mar. 16, 2012); *Righthaven, LLC v. Hyatt*, 2:10-CV-01736-KJD, 2011 WL 3652532 (D. Nev. Aug. 19, 2011); *Righthaven LLC v.*

12

*Mostofi*, 2:10-CV-1066-KJD-GWF, 2011 WL 2746315 (D. Nev. July 13, 2011). In those cases, the court had already determined that the assignment of rights that was in effect at the time the complaint was filed did not confer standing to sue because it assigned to the plaintiff only the bare right to sue. The plaintiff and the original copyright holder then executed an amendment to the original assignment that he claimed addressed the problem. The court in *Righthaven LLC v. Mostofi* explained why this argument was unavailing:

> Notwithstanding the actual transaction that occurred, Plaintiff argues that the amendment it executed with Stephens Media on May 9, 2011 fixes any possible errors in the original SAA that would prevent Plaintiff from having standing in this matter. Specifically, Plaintiff alleges that this amendment further clarifies and effectuates, "to the extent not already accomplished, what has at all times been the intent of the parties – to transfer full ownership in copyright," to Plaintiff. This amendment, however, cannot create standing because "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint was filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4 (1992) (quoting *Newman–Green, Inc. v. AlfonzoLarrain*, 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*). Although a court may allow parties to amend defective allegations of jurisdiction, it may not allow the parties to amend the facts themselves. *Newman–Green*, 490 U.S. at 830. As an example, a party who misstates his domicile may amend to correctly state it. This is an amendment of the allegation. However, that party is not permitted to subsequently move in order to change his domicile and amend accordingly. This would be an amendment of the jurisdictional facts, which is not allowed. *See id.* Here, Plaintiff and Stephens Media attempt to impermissibly amend the facts to manufacture standing. Therefore, the Court shall not consider the amended language of the SAA, but the actual assignment and language of the SAA as it existed at the time the complaint was filed.

*Righthaven LLC v. Mostofi*, 2011 WL 2746315, at *3. Plaintiff offers no convincing argument distinguishing the *Righthaven* cases, or establishing why it is entitled to an exception to the general rule that standing is determined by the facts as they exist at the time the complaint is filed.

Plaintiff relies on *Co-opportunities, Inc. v. Nat'l Broad. Co., Inc*., 510 F. Supp. 43 (N.D. Cal. 1981). In that case, the plaintiff had acquired transfer of copyright before filing suit, but the court found that this conveyance did not include an assignment of existing causes of action for infringement. *Id.* at 46. The defendant filed a motion for summary judgement arguing that the infringement had occurred before the assignment of copyright, and that without the assignment of existing causes of action, the plaintiff thus lacked standing to bring suit. *Id.* After the motion was

13

filed, the plaintiff and its predecessor in interest effected an assignment of the right to pursue existing causes of action. *Id.* at 46-47. The court held that the assignment of the accrued cause of action related back to the date of the original complaint, and that the plaintiff thus had standing to bring suit. *Id.* at 48. Plaintiff also cites to a treatise indicating that where a general assignment of copyright does not include accrued causes of action, such defects may be cured by a later grant executed prior to trial. Pl.'s Mot. at 21 (quoting 3-12 Nimmer on Copyright § 12.02(c)).

The problem for Plaintiff is that the case at bar does not involve a previous transfer of copyright that simply failed to assign the right to pursue previously accrued causes of action. While the effect of the agency agreements on Plaintiff's standing to bring suit has yet to be determined, there is no argument that these agreements transferred copyright but simply failed to assign accrued causes of action. Indeed, there is nothing in the record to date indicating that the alleged infringement in this case occurred prior to the execution of the agency agreements, so there would be no accrued causes of action to transfer.

If this Court finds that the agency agreements transferred rights under the Copyright Act sufficient to confer standing to sue, these recent assignments are moot. If this Court reaches the contrary conclusion, however, the reasoning in *Righthaven* cases will apply here. If Plaintiff lacked standing to sue at the time the case was filed, it cannot now "cure" this fundamental lack with a later assignment of rights. *See Clark*, 259 F.3d at 1006. *Co-Opportunities* and the passage from Nimmer are thus inapplicable.

This Court thus finds that Plaintiff may not assert standing to sue in this case based on an assignment of rights in the agreements executed in March and April of 2013.

///
///
///
///
///
///
///
///

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss to the extent that Plaintiff relies on the copyright assignments or the subsequent assignment of rights to establish standing to sue under the Copyright Act. The Court **DENIES** Defendant's motion without prejudice as to the effect of the agency agreements.

This order disposes of Docket No. 31.

IT IS SO ORDERED.

Dated: May 13, 2013

_____
EDWARD M. CHEN
United States District Judge