PAGES 1 – 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

MINDEN PICTURES, INC.,                 )
                                       )
            PLAINTIFF,                 )
                                       )
   VS.                                 ) NO. C 12–04601 EMC
                                       )
JOHN WILEY & SONS, INC.,               )
                                       ) SAN FRANCISCO, CALIFORNIA
            DEFENDANT.                  ) THURSDAY
                                       ) MAY 9, 2013
_____) 1:39 P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR PLAINTIFF**          HARMON & SEIDMAN, LLC
                           33 SPINDRIFT PASSAGE
                           CORTE MADERA, CALIFORNIA  94925
                      **BY:  ROBERT W. CROCKETT, ESQUIRE**


**FOR DEFENDANT**          LEVINE, SULLIVAN, KOCH & SCHULZ, LLP
                           1888 SHERMAN STREET, SUITE 370
                           DENVER, COLORADO  80203
                      **BY:  STEVEN D. ZANSBERG, ESQUIRE**



*REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
*              OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**PROCEEDINGS; THURSDAY, MAY 9, 2013; 1:39 P.M.**

**THE CLERK:**  CALLING CASE C 12-4601, MINDEN PICTURES VERSUS JOHN WILEY & SONS.

COUNSEL, PLEASE COME TO THE PODIUM AND STATE YOUR NAME FOR THE RECORD.

**MR. CROCKETT:**  GOOD AFTERNOON, YOUR HONOR.  ROBERT CROCKETT FOR PLAINTIFF MINDEN PICTURES.

**THE COURT:**  GOOD AFTERNOON, MR. CROCKETT.

**MR. ZANSBERG:**  GOOD AFTERNOON, YOUR HONOR.  STEPHEN ZANSBERG FOR WILEY & SONS, THE DEFENDANT.

**THE COURT:**  THANK YOU, MR. ZANSBERG.

THE FIRST QUESTION IS KIND OF A PROCEDURAL QUESTION, AND THAT IS HOW ARE WE EVALUATING THIS MOTION?  ALTHOUGH IT'S A MOTION TO DISMISS, IT IS A MOTION TO DISMISS BASED ON 12(B)(1), WHICH ALLOWS THE CONSIDERATION OF EVIDENCE OUTSIDE THE FOUR CORNERS OF THE COMPLAINT.

BUT WHAT'S MORE IMPORTANT, SEEMS TO ME, IS THAT WHERE THERE ARE ISSUES THAT INTERRELATE TO THE MERITS ANALYSIS -- AND I DO THINK THAT STANDING AND OWNERSHIP IS AS MUCH A MERITS QUESTION AS IT IS A JURISDICTIONAL QUESTION.

IF WE'RE GOING TO CONSIDER THIS EVIDENCE, I THINK IT HAS TO BE DONE IN THE CONTEXT OF -- AS IF IT WERE A SUMMARY JUDGMENT MOTION UNDER RULE 56.  THAT'S HOW I SEE IT.  I'M NOT COMFORTABLE SORT OF MAKING FACTUAL FINDINGS NOT USING THE

PRESUMPTIONS, AND THE INTENTMENTS, AND THE INFERENCES THAT WOULD NORMALLY APPLY UNDER RULE 56 WHERE THERE IS AN OVERLAY AND RELATEDNESS TO MERITS-BASED -- WHAT I CONSIDER MERITS-BASED ISSUES.

MR. ZANSBERG: MAY I ADDRESS THAT, YOUR HONOR?

THE COURT: YEP.

MR. ZANSBERG: I UNDERSTAND YOU'VE ISSUED AN ORDER AND HAVE SET FORTH YOUR FINDING THAT THIS SHOULD BE CONVERTED INTO A RULE 56 SUMMARY JUDGMENT MOTION. WE MAY NOT HAVE DONE AN ADEQUATE JOB IN OUR BRIEFING DISTINGUISHING *AUGUSTINE*, WHICH VERY CLEARLY DID INVOLVE AN INTERRELATED INTERTWINING OF THE ISSUES OF JURISDICTION AND THE ISSUES OF THE MERITS.

THE COURTS HAVE EXPRESSED WHETHER OR NOT THE CLAIM ACCRUED TURNED ON THE SAME FACTS AS THE DEFENDANT'S LIABILITY, WHETHER OR NOT THE DOCTORS WERE NEGLIGENT IN THE APPRISING -- IN PROVIDING CARE AND APPRISING THE PATIENT. THEY WERE ONE IN THE SAME. THE DEFENDANT'S LIABILITY AND THE JURISDICTIONAL ISSUE WERE INTERTWINED.

HERE, AND IN THE NUMEROUS COPYRIGHT CASES WE HAVE CITED, INCLUDING MORE RECENT AND NINTH CIRCUIT CASES, THE *WARREN FOX* CASE, THE ISSUE OF STANDING DOES NOT INVOLVE ANY CONDUCT BY THE DEFENDANT. ALL OF THE ISSUES THAT ARE THE MERITS OF THIS CASE, WHETHER OR NOT LICENSES WERE EXCEEDED IN ANY WAY, OR COPIES WERE MADE WITHOUT AUTHORIZATION, BASICALLY, BY WILEY, HAVE NOTHING TO DO WITH THE ISSUE OF THE PLAINTIFF'S

STANDING, WHETHER OR NOT THE PLAINTIFF HAS OWNERSHIP OR IS A BENEFICIAL OWNER.

WILEY'S -- ALL OF THE INFORMATION CONCERNING WILEY'S CONDUCT IS COMPLETELY IRRELEVANT TO THAT.  AND UNDER THE *WARREN VERSUS FOX* CASE, AND THE NUMEROUS OTHER CASES WE'VE CITED IN OUR BRIEFS WITHIN THE NINTH CIRCUIT AND OUTSIDE THE NINTH CIRCUIT, ALL OF THE *RIGHTHAVEN* CASES, QUITE CLEARLY -- IN FACT, THE *WARREN* CASE IN A FOOTNOTE MENTIONS THE RELATIONSHIP OF THE ISSUE OF JURISDICTION AND STANDING WITH MERITS.

IT IS TRUE THAT THE PLAINTIFF'S STANDING IS AN ELEMENT OF THE PLAINTIFF'S CLAIM, BUT THAT WOULD MEAN THAT IN EVERY CASE WHENEVER STANDING WAS PRESENTED AS A BASIS FOR A 12(B)(1) MOTION, IT WOULD CONVERT THAT MOTION INTO A RULE 56 MOTION.

SO, WE THINK THE BETTER COURSE IS TO FOLLOW THE COPYRIGHT CASES THAT ADDRESS THE ISSUE OF STANDING OUTSIDE OF THE CONTEXT OF RULE 56.

THE COURT:  ALL RIGHT.  LET ME SEE WHAT YOUR REACTION -- DO YOU HAVE A DIFFERENT VIEW?  AND WHAT ABOUT THE *WARREN* CASE?  DO YOU AGREE WE SHOULD KEEP THIS WITHIN THE CONFINES OF A 12(B)(1)?

MR. CROCKETT:  NO, YOUR HONOR.  FOR THE REASONS SET FORTH IN OUR BRIEF, WE BELIEVE THE COURT REALLY HAS TO CONSIDER THIS MATTER AS A SUMMARY JUDGMENT MOTION, IN EFFECT, OR ELSE DENY IT AND WAIT TO RESOLVE THE ISSUE UNTIL IT CAN BE RAISED BY

A SUMMARY JUDGMENT MOTION.

**THE COURT:** WHAT'S YOUR RESPONSE TO THE *WARREN FOX FAMILY* CASE THEN?

**MR. CROCKETT:** I'M NOT FAMILIAR WITH THAT CASE, YOUR HONOR, BUT THE CASES THAT WE CITED INCLUDING THE *AUGUSTINE* CASE, AND THE *ROBERTS* CASE, AND THE *BELL VERSUS HOOD* CASE ALL HOLD WHERE A MOTION TO DISMISS ON A JURISDICTIONAL ISSUE INVOLVES A FACTUAL ISSUE WHICH GOES TO THE MERITS, THEN THE COURT SHOULD EMPLOY THE STANDARD APPLICABLE TO A SUMMARY JUDGMENT MOTION.  AND HERE, EVEN THOUGH THE JURISDICTIONAL ISSUE DOESN'T GO TO THE DEFENDANT'S CONDUCT, IT STILL GOES TO THE MERITS.

ONE SUGGESTION I WOULD HAVE, YOUR HONOR, IS THAT THE COURT MAY WISH TO CONSIDER ORDERING FURTHER BRIEFING IN THIS MATTER, BECAUSE IF THE CASE IS GOING TO BE ADDRESSING THE ISSUES THAT ARE SUGGESTED IN YOUR ORDER THAT YOU ISSUED THE OTHER DAY, IN PREPARING FOR THE ARGUMENT, I FIND THAT I'M CITING SOME AUTHORITIES THAT HAVEN'T REALLY BEEN DISCUSSED IN THE BRIEFING BECAUSE WE WERE FOCUSED SO MUCH ON THE COLLATERAL ESTOPPEL ISSUE AND NOT SO MUCH ON STANDING IN GENERAL.  I THINK IT WOULD BENEFIT FROM FURTHER BRIEFING.

**THE COURT:** ALL RIGHT.  I WOULD LIKE TO GET TO THOSE, THE SORT OF MERITS ISSUE.

I WILL SAY WITH RESPECT TO COLLATERAL ESTOPPEL, I AM AWARE OF JUDGE ALSUP'S ORDER.  I AM AWARE OF THE CASE LAW THAT

TALKS ABOUT HOW, FOR INSTANCE, A DEFAULT JUDGMENT OR CERTAIN DISMISSALS AND SANCTION-TYPE BASED ADJUDICATIONS CAN BE DEEMED AN ADJUDICATION OF AN ISSUE SUFFICIENT TO INVOKE COLLATERAL ESTOPPEL.

ON THE OTHER HAND, I FIND IT A HARD REACH TO SAY THAT EVIDENTIARY SANCTIONS IMPOSED BY JUDGE ALSUP IN THAT CASE COULD THEN BE USED AS COLLATERAL ESTOPPEL IN A NONMUTUAL CONTEXT.  IN OTHER WORDS, WHATEVER CONDUCT OCCURRED IN THAT CASE WOULD BAR MINDEN FOREVER AGAINST ALL LICENSEES USING SIMILAR TYPES OF LICENSES, EVEN THOUGH THEY WERE NOT PARTY TO THE *PEARSON* CASE, WOULD BAR ANY ENFORCEABILITY OF ITS RIGHTS.  THAT'S A PRETTY BIG PILL TO SWALLOW, AND I'M VERY HESITANT TO GO THAT FAR.

SO, I'D RATHER REACH, YOU KNOW, THE MERITS OF THE QUESTION, AND THAT'S WHERE I HAVE CITED SOME AUTHORITY IN MY SUPPLEMENTAL ORDER THAT REALLY WASN'T DISCUSSED, WHICH I TRIED TO GET TO YOU ALL IN ADVANCE AND WHETHER WE NEED TO DO FURTHER BRIEFING OR NOT.

LET ME ASK YOU WHAT YOUR REACTION IS.  MY UNDERSTANDING, AFTER LOOKING AT THE *GARDNER* CASE AND THE *SYBERSOUND* CASE, IS THAT ONE OF THE CRITICAL ISSUES, SEEMS TO ME, IN LIGHT OF THE HISTORY OF THE OLD COPYRIGHT ACT AND THEN THE CHANGES THAT OCCURRED THEREAFTER, IS THAT THE QUESTION IS WHETHER OR NOT THE -- FOR STANDING IS WHETHER OR NOT THERE WAS AN EXCLUSIVE LICENSE TRANSFERRED, BECAUSE IF THERE WAS NOT AN EXCLUSIVE LICENSE, THE OLD RULE APPLIES AND STANDING DOES NOT

OBTAIN.  BUT IF THERE WAS AN EXCLUSIVE LICENSE THAT WAS MORE THAN JUST A BARE ASSIGNMENT OF A CAUSE OF ACTION THAT HAD SOME SUBSTANCE TO IT, THAT -- IT SEEMS TO ME THAT THERE IS STANDING.

**MR. CROCKETT:**  MAY I BE HEARD ON THAT, YOUR HONOR?

**THE COURT:**  YES.

**MR. CROCKETT:**  THE TWO CASES THAT THE COURT CITED IN THE SECOND NOTICE RE: MOTION TO DISMISS, BOTH INVOLVE EXCLUSIVE LICENSES, AND THE COURT ASKED THE PARTIES TO BE PREPARED TO DISCUSS THAT QUESTION OF WHETHER MINDEN PICTURES IS AN EXCLUSIVE LICENSEE.  THE ANSWER TO THAT IS NO, MINDEN DOES NOT CONTEND IT IS AN EXCLUSIVE LICENSEE, BUT MINDEN, NONETHELESS, HAS STANDING TO SUE, AND THAT REQUIRES ME TO EXPLAIN THE DISTINCTION BETWEEN EXCLUSIVE RIGHTS UNDER A COPYRIGHT AND EXCLUSIVE LICENSES, AND THIS IS THE KEY TO THIS WHOLE CASE.

EXCLUSIVE RIGHTS AND -- FIRST OF ALL, LET ME PREFACE THIS BY SAYING THAT IT'S UNFORTUNATE THAT THE TWO WORDS -- OR THAT THE WORD "EXCLUSIVE" APPEARS IN BOTH CONTEXTS, AND IT LEADS TO A LOT OF CONFUSION, NOT ONLY AMONG LITIGANTS BUT AMONG COURTS.

EXCLUSIVE RIGHTS ARE THE KEY QUALITIES OF COPYRIGHT OWNERSHIP SET FORTH IN 17 USC 106.  THREE OF THOSE EXCLUSIVE RIGHTS ARE THE RIGHTS TO AUTHORIZE REPRODUCTION OF THE COPYRIGHTED WORK, THE RIGHT TO AUTHORIZE DISTRIBUTION OF THE COPYRIGHTED WORK, AND THE RIGHT TO DISPLAY OR AUTHORIZE THE DISPLAY OF THE COPYRIGHTED WORK PUBLICLY.

NOW, EXCLUSIVE RIGHTS MAY BE JOINTLY OWNED WITH EACH CO-OWNER HAVING AN INDEPENDENT RIGHT TO USE OR LICENSE THE USE OF THE COPYRIGHT.  NOW, THIS SOUNDS LIKE A PARADOX.  EXCLUSIVE RIGHTS DO NOT HAVE TO BE OWNED EXCLUSIVELY, BUT IT'S A WELL-ESTABLISHED PRINCIPLE OF COPYRIGHT LAW.  IN THE *GARDNER VERSUS NIKE* DECISION ITSELF, THE NINTH CIRCUIT DISCUSSED THIS AT PAGE 779, THE COURT SAID:

"SECTION 201(D)(1) ENABLES THE OWNER TO TRANSFER ANY FRACTION OF HIS OR HER OWNERSHIP TO ANOTHER PARTY, THEREBY, MAKING THAT PARTY A WHOLE OR JOINT OWNER."

ANOTHER NINTH CIRCUIT CASE ON THIS POINT IS *ODDO VERSUS RIES*, 743 F.2D 630 AT PAGES 632 AND 633, WHERE THE COURT SAYS:

"EACH CO-OWNER HAS AN INDEPENDENT RIGHT TO USE OR LICENSE THE USE OF THE COPYRIGHT."

NOW, THE CENTRAL DISTRICT OF CALIFORNIA EXPLAINED THIS IN A CASE CALLED *NAFAL VERSUS CARTER*, 540 F.SUPP 2D 1128 AT 1139.  THE COURT SAID, QUOTE:

"BOTH THE 1909 AND 1976 ACTS ALLOW MULTIPLE INDIVIDUALS TO BE JOINT OWNERS OR CO-OWNERS OF THE SAME COPYRIGHT."

THEN THEY QUOTE FROM THE HOUSE REPORT, QUOTE:

"UNDER THE BILL AS UNDER THE

PRESENT LAW, CO-OWNERS OF A COPYRIGHT WOULD BE TREATED GENERALLY AS TENANTS IN COMMON, WITH EACH CO-OWNER HAVING AN INDEPENDENT RIGHT TO USE OR LICENSE THE USE OF A WORK."

AND ONE OF THE LEADING AUTHORITIES ON COPYRIGHT LAW "NIMMER ON COPYRIGHT," ALSO EXPLAINS THAT AN AUTHOR -- AND THIS IS AT 1-6 NIMMER ON COPYRIGHT SECTION 6.01. HE EXPLAINS THAT AN AUTHOR OR COPYRIGHT PROPRIETOR MAY TRANSFER AN UNDIVIDED INTEREST IN SUCH COPYRIGHT TO ONE OR MORE PERSONS RESERVING TO HIMSELF AN UNDIVIDED INTEREST.

NOW, THUS, THESE EXCLUSIVE RIGHTS ARE NOT EXCLUSIVE BECAUSE THEY MUST BE OWNED BY A SINGLE ENTITY; RATHER, THE RIGHTS ARE ENJOYED BY THE OWNERS OF A COPYRIGHT TO THE EXCLUSION OF ALL NON-OWNERS.

NOW, 17 USC 50(1)(B) PROVIDES THAT:

"A CO-OWNER OF ANY OF THE EXCLUSIVE RIGHTS SET FORTH IN SECTION 106 HAS STANDING TO SUE. THE LEGAL OR BENEFICIAL OWNER OF AN EXCLUSIVE RIGHT UNDER A COPYRIGHT IS ENTITLED TO INSTITUTE AN ACTION FOR INFRINGEMENT OF THAT PARTICULAR RIGHT COMMITTED WHILE HE OR SHE IS THE OWNER OF IT."

NOW, COPYRIGHT OWNERSHIP MAY BE TRANSFERRED IN A NUMBER OF WAYS, AND ONE OF THE WAYS IS BY AN EXCLUSIVE LICENSE. ANOTHER WAY IS BY AN ASSIGNMENT.

SEVENTEEN USC SECTION 101 PROVIDES, QUOTE:

"A TRANSFER OF COPYRIGHT OWNERSHIP IS AN ASSIGNMENT, MORTGAGE, EXCLUSIVE LICENSE OR ANY OTHER CONVEYANCE -- "

I'M SKIPPING SOME THINGS.

"...OF ANY OF THE EXCLUSIVE RIGHTS COMPRISED IN A COPYRIGHT, BUT NOT EXCLUDING A NON-EXCLUSIVE LICENSE.

THUS, THE GRANTING OF AN EXCLUSIVE LICENSE IS MERELY ONE MEANS OF TRANSFERRING COPYRIGHT OWNERSHIP.  AN ASSIGNMENT OF EXCLUSIVE RIGHTS UNDER A COPYRIGHT IS ANOTHER WAY TO TRANSFER COPYRIGHT OWNERSHIP.  AN EXCLUSIVE LICENSE IS A LICENSE UNDER WHICH THE LICENSOR LOSES THE RIGHT WHILE THE LICENSE IS IN EFFECT TO EXPLOIT THE WORK DIRECTLY OR EVEN TO LICENSE THE WORK TO ADDITIONAL THIRD PARTIES.

UNDER A NON-EXCLUSIVE LICENSE, THE LICENSOR RETAINS THE RIGHT TO ISSUE SIMILAR LICENSES TO OTHER PARTIES.  IN THIS CASE, MINDEN PICTURES SOLD WILEY NON-EXCLUSIVE LICENSES.  THAT MEANS MINDEN WAS FREE TO SELL SIMILAR LICENSES TO OTHER PUBLISHERS, WHICH IT DID.

NOW, IN ORDER TO HAVE STANDING BASED ON AN EXCLUSIVE LICENSE, THE PLAINTIFF MUST PROVE THE LICENSE WAS EXCLUSIVE, RATHER THAN NON-EXCLUSIVE.  THAT'S WHY MANY OF THE CASES ON STANDING -- FOR EXAMPLE, THE *SYBERSOUND* CASE FOCUSED ON WHETHER OR NOT THE PLAINTIFF HAD AN EXCLUSIVE LICENSE.

IN *SYBERSOUND*, THE PLAINTIFF BASED ITS CONTENTION -- ITS STANDING ON THE CONTENTION IT OWNED AN EXCLUSIVE LICENSE. THE COURT FOUND SYBERSOUND HAD NOT HAD AN EXCLUSIVE LICENSE BECAUSE IT RECEIVED ITS RIGHTS FROM ONLY ONE OF SEVERAL CO-OWNERS OF THE COPYRIGHT.

NOW --

**THE COURT:**  AND THERE WAS NO ASSIGNMENT, YOU'RE SAYING?

**MR. CROCKETT:**  CORRECT.

**THE COURT:**  ASSIGNMENT IS AN ALTERNATIVE MEANS OF TRANSFERRING THE RIGHTS?

**MR. CROCKETT:**  RIGHT.

**THE COURT:**  INCLUDING THE RIGHT TO SUE, AND, THEREFORE, *NIKE*, THE *GARDNER* AND THE *SYBERSOUND* CASES INVOLVE EXAMINATION OF THE EXCLUSIVE LICENSE *VEL NON*, NOT THE QUESTION OF AN ASSIGNMENT.  THAT'S YOUR BASIC POINT; IS THAT RIGHT?

**MR. CROCKETT:**  CORRECT.  YOUR HONOR, I COULD POINT OUT THE *SYBERSOUND* OPINION INCLUDES A STATEMENT, WHICH I AM GOING TO READ TO YOU, WHICH HAS BEEN THE SUBJECT OF A LOT OF CRITICISM FROM OTHER COURTS AND COPYRIGHT EXPERTS.  THE COURT SAYS AT PAGE 114, QUOTE:

"ALTHOUGH THE 1976 COPYRIGHT ACT PERMITS EXCLUSIVE RIGHTS TO BE CHOPPED UP AND OWNED SEPARATELY, TO BE EFFECTIVE, THE ASSIGNMENT OR OTHER TYPE OF ALIENATION

PERMITTED BY SECTIONS 201 AND 201(D)(2) MUST BE EXCLUSIVE."

THAT STATEMENT, AS I SAID, HAS BEEN HEAVILY CRITICIZED BY OTHER COURTS AND COPYRIGHT EXPERTS BECAUSE IT SUGGESTS THAT EXCLUSIVE RIGHTS UNDER A COPYRIGHT CANNOT BE JOINTLY OWNED.  THE NINTH CIRCUIT COULD NOT HAVE MEANT THAT.

HOWEVER, IN THE *SYBERSOUND* CASE, BECAUSE IN THAT CASE ITSELF THE COPYRIGHTS UNDER CONSIDERATION WERE JOINTLY OWNED BY SEVERAL DIFFERENT ENTITIES, AND IT WAS THE FACT THAT SYBERSOUND OBTAINED ITS PURPORTEDLY EXCLUSIVE LICENSE FROM ONLY ONE OF THOSE CO-OWNERS THAT LED THE COURT TO CONCLUDE THAT SYBERSOUND DID NOT REALLY HAVE AN EXCLUSIVE LICENSE.

THE *GARDNER VERSUS NIKE* CASE HELD, AS I QUOTED BEFORE, THAT THERE CAN BE JOINT OWNERS OF ANY FRACTION OF A COPYRIGHT.

NOW, HERE, IN THIS CASE, MINDEN --

**THE COURT:**  YES, YOU CAN HAVE JOINT OWNERSHIP WHERE THE ORIGINAL COPYRIGHT OWNER RETAINS CERTAIN RIGHTS ALONG WITH THE LICENSOR OR ASSIGNEE.  WHAT IF THE ASSIGNMENT IS MADE TO MULTIPLE ASSIGNEES, JUST LIKE MULTIPLE LICENSES?  WHY COULDN'T IT MEAN THAT?  WHY COULDN'T THE NINTH CIRCUIT WORDING IN *SYBERSOUND* MEAN THAT SITUATION, I.E., YOU CAN ASSIGN IT TO ONE EXCLUSIVE ASSIGNEE BUT NOT TO A THOUSAND OF THEM AND EACH OF THEM HAVING STANDING?

**MR. CROCKETT:**  THEN THEY WOULD HAVE STANDING ON THE

BASIS OF AN EXCLUSIVE LICENSE.  THAT'S WHAT WAS AT ISSUE IN *SYBERSOUND*.  THE PLAINTIFF WAS CLAIMING --

**THE COURT:**  WHAT'S THE DIFFERENT BETWEEN AN ASSIGNMENT AND LICENSE?

**MR. CROCKETT:**  IN THIS CASE, MINDEN DIDN'T HAVE A LICENSE.  IT SOLD LICENSES TO WILEY.  WHAT MINDEN HAD WAS A GRANT OF CO-OWNERSHIP OF -- FIRST OF ALL, BEFORE THE LICENSES WERE EVER SOLD TO WILEY, MINDEN WAS GRANTED CO-OWNERSHIP OF THREE OF THE EXCLUSIVE RIGHTS.

**THE COURT:**  SO ASSIGNMENT IS A BROADER TRANSFER OF RIGHTS --

**MR. CROCKETT:**  CORRECT.

**THE CLERK:**  THERE IS A DISTINCTION BETWEEN ASSIGNMENTS AND LICENSES.  WHY CAN'T THIS LANGUAGE FROM *SYBERSOUND*, WHICH SAYS AN ASSIGNMENT OR OTHER TYPE OF ALIENATION, WHICH INCLUDE LICENSES, MUST BE EXCLUSIVE -- IT DOES HAVE MEANING.  TO HAVE AN EXCLUSIVE ASSIGNMENT DOES HAVE MEANING THAT'S DISTINCT FROM AN EXCLUSIVE LICENSE, WHICH IS THERE ARE TWO DIFFERENT KINDS OF TRANSFERS.

**MR. CROCKETT:**  YES, YOUR HONOR, BUT YOU DON'T HAVE TO HAVE EXCLUSIVITY IN ORDER TO HAVE STANDING IF YOUR BASIS FOR STANDING IS THAT YOU HAVE BEEN GRANTED CO-OWNERSHIP OF THE COPYRIGHT OR SOME OF THE EXCLUSIVE RIGHTS UNDER THE COPYRIGHT.

**THE COURT:**  SO IF A COPYRIGHT OWNER ASSIGNED, QUOTE/UNQUOTE, ITS COPYRIGHT RIGHTS TO TEN DIFFERENT ENTITIES

BESIDES MINDEN, EACH OF THEM, IN YOUR VIEW, WOULD HAVE THE RIGHT -- IT DOESN'T HAVE TO BE EXCLUSIVE, YOU LOOK AT THE NATURE OF THE ASSIGNMENT?  IF IT'S BROAD, ANY OF THE ASSIGNEES CAN BRING SUIT?

**MR. CROCKETT:**  YES.  THE DIFFERENCE, THE DISTINCTION IS THAT MINDEN IS ONE OF THE OWNERS OF THE COPYRIGHT RIGHTS.  IT'S NOT SIMPLY A LICENSEE AND --

**THE COURT:**  AND THE OWNERSHIP CAN BE DIVIDED UP AND REPLICATED A THOUSAND TIMES?

**MR. CROCKETT:**  AS A PRACTICAL MATTER, IT'S NOT USUALLY WHAT HAPPENS, BUT, THEORETICALLY, YES.

WHAT HAPPENS IN THIS INDUSTRY, AS A PRACTICAL MATTER, IS THAT A PHOTOGRAPHER WILL GRANT EXCLUSIVE RIGHTS TO A STOCK PHOTO AGENCY, LIKE MINDEN, WITH THE UNDERSTANDING THAT MINDEN WILL THEN SELL LICENSES TO THE PHOTOGRAPHER'S PHOTOGRAPHS, AND IN THE EVENT THAT THERE'S AN INFRINGEMENT OF THOSE LICENSES, MINDEN WILL FOLLOW UP AND BE THE ENTITY THAT FILES SUIT.

NOW, HERE --

**THE COURT:**  THAT'S CERTAINLY ALLOWABLE UNDER *SYBERSOUND* IF MINDEN WAS THE ONLY ASSIGNEE.  THE QUESTION IS:  IF THERE ARE MULTIPLE ASSIGNEES, CAN MINDEN SUE?

**MR. CROCKETT:**  THE QUOTATION THAT I READ TO YOU FROM THE *SYBERSOUND* OPINION, THERE'S REALLY NO WAY AROUND IT, YOUR HONOR.  IT'S JUST LOOSE LANGUAGE ON THE PART OF THE COURT.

THE ACTUAL HOLDING OF THE DECISION IS THAT

SYBERSOUND, THE PLAINTIFF IN THAT CASE, DID NOT HAVE AN EXCLUSIVE LICENSE.

TO THE EXTENT THAT THIS ONE SENTENCE SUGGESTS THAT ANY KIND OF OWNERSHIP OF A COPYRIGHT HAS TO BE EXCLUSIVE, IT JUST DOESN'T MAKE ANY SENSE.  IT'S WRONG.  IT'S CONTRADICTED BY THE *SYBERSOUND* OPINION ITSELF.

**THE COURT:**  IS MINDEN NOT THE EXCLUSIVE ASSIGNEE FOR MOST OF THESE?  AREN'T THESE CONTRACTS FAIRLY EXCLUSIVE AS IT IS?

**MR. CROCKETT:**  WELL, IN ALMOST EVERY CASE THE PHOTOGRAPHER RETAINED THE RIGHT TO SELL HIS OWN LICENSES, SO THEY ARE NOT AN EXCLUSIVE -- THEY DON'T -- MINDEN DID NOT HAVE AN EXCLUSIVE LICENSE.  MANY OF THE ASSIGNMENTS THE AGENCY AGREEMENTS DO MAKE -- DO PROVIDE THAT MINDEN IS THE -- HAS THE EXCLUSIVE RIGHT TO SELL LICENSES, BUT THAT'S NOT WHAT OUR CLAIM FOR STANDING IS BASED ON, YOUR HONOR.

WE ARE NOT CLAIMING WE HAD AN EXCLUSIVE LICENSE, AND WE DON'T HAVE TO SHOW THAT WE WERE THE ONLY ENTITY THAT HAD THE RIGHT TO ISSUE LICENSES.  WE HAD CO-OWNERSHIP OF THE RIGHT TO ISSUE LICENSES, AND MINDEN WAS ABLE TO SELL NON-EXCLUSIVE LICENSES TO WILEY, NOT BECAUSE MINDEN ITSELF HAD AN EXCLUSIVE LICENSE, BUT, RATHER, BECAUSE MINDEN HAD ENTERED INTO THESE AGENCY AGREEMENTS WITH THE INDIVIDUAL PHOTOGRAPHERS IN WHICH THE PHOTOGRAPHERS GRANTED MINDEN COOWNERSHIP OF THREE OF THE EXCLUSIVE RIGHTS SET FORTH IN SECTION 1006.

MINDEN HAS STANDING UNDER THE AGENCY AGREEMENTS BECAUSE THEY TRANSFERRED EXCLUSIVE RIGHTS IN A COPYRIGHT, NOT EXCLUSIVE LICENSES.

**THE COURT:**  ALL RIGHT.  LET ME ASK ONE LAST QUESTION, THEN I WANT A RESPONSE.

HAS THIS LANGUAGE -- AND I THINK YOU WOULD CHARACTERIZE IT AS DICTA -- IN *SYBERSOUND* BEEN REPUDIATED BY THE NINTH CIRCUIT, OR LIMITED, OR COMMENTED ON BY ANY SUBSEQUENT NINTH CIRCUIT CASE?

**MR. CROCKETT:**  NO, YOUR HONOR, BUT WE ARE HOPING THE NINTH CIRCUIT WILL REPUDIATE IT IN THE APPEAL OF THE *MINDEN VERSUS PEARSON* CASE.

**THE COURT:**  WHAT'S YOUR VIEW?

**MR. ZANSBERG:**  YOUR HONOR, I MAY ACTUALLY JOIN WITH THE PLAINTIFF IN THE REQUEST THAT THERE BE ADDITIONAL BRIEFING ON THIS.  I'LL TELL YOU, I'VE HEARD FROM YOUR HONOR ABOUT YOUR INCLINATION NOT TO APPLY COLLATERAL ESTOPPEL AND TO CONSIDER, AS WE ARE NOW, THE CONTENTS OF THE AGENCY AGREEMENTS, PERHAPS NOT THE LATER ASSIGNMENT AGREEMENTS THAT WERE DEALT WITH SUBSTANTIVELY BY JUDGE ALSUP.

WE -- I WOULD LIKE THE OPPORTUNITY TO ADDRESS THE ISSUE OF ASSIGNMENT VERSUS EXCLUSIVE LICENSES.  THIS IS THE FIRST I'VE HEARD THAT MINDEN PICTURES IS NOT PURPORTING TO BE AN EXCLUSIVE LICENSEE FROM THE PHOTOGRAPHERS.  THE AGENCY AGREEMENTS THAT HAVE BEEN PROVIDED TO THE COURT AS ATTACHED TO

MR. MINDEN'S DECLARATION CERTAINLY APPEAR TO BE EXCLUSIVE LICENSE AGREEMENTS, OR WOULD SEEK TO BE THEM.

IT'S CLEAR FROM THE TEXT OF THOSE AGREEMENTS THAT THE PHOTOGRAPHER RETAINS ALL COPYRIGHT IN THOSE IMAGES AND THAT HE IS APPOINTING EACH OF -- HE OR SHE IS APPOINTING MINDEN TO SERVE AS A LICENSING AGENT FOR THESE PARTICULAR TYPES OF RIGHTS.

AND TO -- AND THE FACT THAT THE PHOTOGRAPHERS DO RETAIN THE RIGHTS, AS THE PLAINTIFF HAS ACKNOWLEDGED, TO LICENSE THEM INDEPENDENTLY WOULD UNDERCUT AN EXCLUSIVE LICENSE AGREEMENT.

AT THIS POINT, WE HAVEN'T YET HAD THE OPPORTUNITY TO EXPLORE THROUGH DISCOVERY WITH THOSE PHOTOGRAPHERS EXACTLY WHAT THEIR RIGHTS WERE IN CONVEYING THOSE AGREEMENTS. IF THE COURT WERE TO TAKE THIS MATTER AS A RULE 56 MOTION, ANY RULING WE WOULD HOPE WOULD BE -- GIVE US THE OPPORTUNITY TO CONDUCT SUCH DISCOVERY. BUT IF THE COURT IS INCLINED TO FIND THAT THERE ISN'T AN EXCLUSIVE LICENSE AGREEMENT ON THE FACE OF THE DOCUMENTS THEMSELVES, THE AGREEMENTS WHICH THE COURT CAN CONSIDER AS A MATTER OF LAW, THEN WE WELCOME THE OPPORTUNITY TO ADDRESS THE ARGUMENTS IN FURTHER BRIEFING BETWEEN THE DIFFERENCE BETWEEN AN ASSIGNMENT AND AN EXCLUSIVE LICENSE.

I DON'T SEE ANYTHING IN THESE AGREEMENTS THAT SUGGESTS THIS IS AN ASSIGNMENT OF EXCLUSIVE RIGHTS SO MUCH AS IT IS OF PURPORTING TO BE AN EXCLUSIVE LICENSE AGREEMENT.

MR. CROCKETT: YOUR HONOR, IT SOUNDS LIKE WHAT COUNSEL IS SAYING IS THAT BOTH PARTIES WOULD BENEFIT FROM SOME FURTHER DISCOVERY AND THEN HAVE THE WHOLE ISSUE DECIDED IN, PERHAPS, CROSS MOTIONS FOR SUMMARY JUDGMENT AT THE END OF DISCOVERY WHEN ALL THE FACTS ARE IN.

THE COURT: THAT MAY BE. I WAS JUST CURIOUS IF YOU HAVE A LEGAL ANALYSIS NOW ABOUT THIS DISTINCTION BETWEEN ASSIGNMENTS AND EXCLUSIVE -- I MEAN, WE HAVE CASE LAW THAT SAYS IF YOU ARE GOING TO LICENSE RIGHTS, YOU HAVE TO HAVE AN EXCLUSIVE LICENSE IN ORDER TO HAVE STANDING.

NOW I'M HEARING FROM PLAINTIFF THAT THEY'RE DISAVOWING ANY CLAIM OF AN EXCLUSIVE LICENSE, BUT, INSTEAD, THEY HAVE AN ASSIGNMENT, WHICH IS A BROADER TRANSFER OF RIGHTS, WHICH DOES NOT HAVE TO BE EXCLUSIVE, AS LONG AS IT'S BROAD ENOUGH TO ENCOMPASS CERTAIN OWNERSHIP RIGHTS, WITH THAT COMES THE RIGHT TO STANDING TO SUE AND TO ENFORCE. I DON'T KNOW IF YOU HAVE -- AND I KNOW THIS IS ALL LATE BREAKING. IF YOU HAVE ANY LEGAL THOUGHTS ON THAT QUESTION, I WOULD BE CURIOUS TO HEAR IT NOW.

MR. ZANSBERG: I BELIEVE AN ASSIGNMENT IS A COMPLETE ABANDONMENT OF ALL RIGHTS IN A TITLE, AND IT CAN BE A SUBSET OF THE BUNDLE OF RIGHTS UNDER THE COPYRIGHT ACT, BUT AN ASSIGNMENT CAN BE -- I'M NOT AWARE OF AN ASSIGNMENT TO MULTIPLE PARTIES.

THE COURT: CAN YOU HAVE AN ASSIGNMENT WITH THE ASSIGNOR RETAINING RIGHTS TO LICENSE ON ITS OWN OR HER OWN OR

HIS OWN?  ARE YOU SAYING THAT'S NOT AN ASSIGNMENT?

**MR. ZANSBERG:**  THAT'S NOT AN ASSIGNMENT.  IT'S A PARTIAL, BUT NOT A COMPLETE -- AN ASSIGNMENT IS A TRANSFER OF TITLE.  AND EVEN IF IT'S A TRANSFER OF TITLE WITH RESPECT TO CERTAIN SUBSET OF RIGHTS, SUCH AS AN EASEMENT IN REAL PROPERTY, IT CAN'T RETAIN RIGHTS WITH RESPECT TO THAT STICK IN THE BUNDLE, IF YOU WILL.

**THE COURT:**  SO YOUR RESPONSE IS THERE'S NOT AN ASSIGNMENT, EVEN THOUGH IT'S CALLED AN ASSIGNMENT, TO THE EXTENT THERE HAS BEEN SOME RETENTION OF RIGHTS WITH RESPECT TO ANY ONE OF THESE STICKS IN THE BUNDLE; IT HAS TO BE MORE FAIRLY CHARACTERIZED AS A LICENSE RATHER THAN AN ASSIGNMENT?

**MR. ZANSBERG:**  I DISAGREE THESE ARE CALLED ASSIGNMENTS, THE AGENCY AGREEMENTS WE ARE TALKING ABOUT. THERE'S NO REFERENCE -- THERE'S NO STATEMENT SUGGESTING AN ASSIGNMENT OF RIGHTS, A TRANSFER OF RIGHTS OF ANY KIND.

THE ASSIGNMENT AGREEMENTS THAT JUDGE ALSUP EXCLUDED -- DIDN'T EXCLUDE, BUT SPECIFICALLY HELD WERE SHAM AGREEMENTS SEEKING TO CONVEY THOSE RIGHTS, AS I UNDERSTAND, THE COURT IS NOT ADDRESSING THOSE AT THIS TIME.  WE COULD TALK ABOUT THOSE SEPARATELY, BUT I WOULD HOPE THAT JUDGE ALSUP'S COLLATERAL ESTOPPEL -- I'M SORRY -- JUDGE ALSUP'S RULING THERE WOULD HAVE COLLATERAL ESTOPPEL EFFECT.

I UNDERSTAND WE WERE -- THAT THE COURT WAS WILLING TO CONSIDER THE SUBSTANCE OF THE AGENCY AGREEMENTS --

**THE COURT:** YEAH.

**MR. ZANSBERG:** -- ONLY, WHICH HAVE NOT BEEN PURPORTED PREVIOUSLY TO BE ASSIGNMENT AGREEMENTS.

**THE COURT:** WELL, IT'S APPARENT TO ME WE'VE GOT BOTH AN ISSUE OF WHETHER THIS SHOULD BE 12(B)(6), THEN WE HAVE THE QUESTION OF ANALYSIS OF ASSIGNMENT VERSUS LICENSE. THEN WE HAVE POTENTIALLY SOME FACTS THAT MAY INFORM THOSE QUESTIONS.

TO ASSURE ACCURACY IN ANY ADJUDICATION I DO MAKE, IT DOES MAKE SENSE FOR US TO EITHER PUT THIS IN ABEYANCE AT THIS POINT, OR I COULD DENY WITHOUT PREJUDICE, BUT REALLY SET THIS UP FOR AN EXPEDITED SUMMARY JUDGMENT MOTION ON THIS QUESTION AND MAYBE FIND OUT FROM YOU ALL WHAT KIND OF DISCOVERY WOULD YOU NEED IN ORDER FOR YOU TO BE COMFORTABLE IN FILING CROSS MOTIONS, OR SUPPLEMENTAL BRIEFS, OR MAYBE WE SHOULD START FROM SQUARE ONE AND DO CROSS MOTIONS?

**MR. CROCKETT:** YOUR HONOR, IT'S MY FEELING THAT IT WOULD BE MORE EFFICIENT AND LESS EXPENSIVE FOR BOTH SIDES SIMPLY TO UNDERTAKE DISCOVERY ON ALL ISSUES. IT'S NOT REALLY THAT MUCH IN A CASE LIKE THIS, BUT, FOR EXAMPLE, IF THEY WANT TO TAKE THE DEPOSITIONS OF THE PHOTOGRAPHERS, I DON'T THINK WE'D WANT TO LIMIT IT TO JUST THIS ISSUE AND THEN MAKE THEM ALL COME BACK FOR OTHER DEPOSITIONS LATER. AS A PRACTICAL MATTER, THEY COULD COMPLETE THEIR DEPOSITIONS OF THESE PHOTOGRAPHERS -- THEY COULD PROBABLY TAKE SEVERAL OR ALL OF THEM IN ONE DAY AND COVER ALL ISSUES.

WHAT I WOULD SUGGEST IS THAT THE COURT SIMPLY DENY THIS MOTION WITHOUT PREJUDICE, IF YOU WISH, AND THEN PERMIT THE PARTIES TO CONTINUE WITH DISCOVERY.  I WOULD PROPOSE THAT WE ALSO GO AHEAD AND SCHEDULE THE SETTLEMENT CONFERENCE, WHICH HAD BEEN PREVIOUSLY SCHEDULED AND TAKEN OFF CALENDAR ON THE COURT'S ORDER.

IT WOULD BE MY SUGGESTION THAT THE COURT GIVE US A CLOSE OF DISCOVERY DATE AND THEN A DATE FOR FILING SUMMARY JUDGMENT MOTIONS AFTER THAT.

**THE COURT:**  OKAY.

**MR. CROCKETT:**  THEN THE COURT WILL ONLY HAVE TO DECIDE ALL THIS ONCE, AND WE'LL HAVE A FULL RECORD, AND ALL THE FACTS WILL BE IN AT THAT POINT.

**THE COURT:**  I THINK THAT MAKES SENSE.

**MR. ZANSBERG:**  IF I MAY BE HEARD?

**THE COURT:**  YEP.

**MR. ZANSBERG:**  I DISAGREE THAT THE DISCOVERY SHOULD PROCEED ON ALL TRACKS.  THE STANDING IS A THRESHOLD ISSUE.  THE ISSUE IS FOCUSED ON -- THAT THE COURT HAS ADDRESSED TODAY ABOUT WHETHER THERE'S AN EXCLUSIVE LICENSE OR AN EXCLUSIVE ASSIGNMENT, AGAIN, GETTING BACK TO MY EARLIER ARGUMENT ABOUT INTERTWINED.

WILEY DOES NOT NEED TO BE SUBJECT TO ANY DISCOVERY IF WE ARE GOING TO BIFURCATE AND HAVE AN EXPEDITED SUMMARY JUDGMENT MOTION.  WE'RE DEALING WITH 288 CLAIMED USES GOING

BACK A DECADE OR MORE.  FOR WILEY TO ENDURE A DISCOVERY ON ALL OF THESE LICENSES, WHICH MAY NOT HAVE STANDING, WOULD BE UNDULY BURDENSOME.  A FIRST PHASE OF DISCOVERY LIMITED EXCLUSIVELY TO THE ISSUE OF STANDING AND A SCHEDULE FOR SUMMARY JUDGMENT ON THAT MOTION WOULD CONSERVE JUDICIAL RESOURCES AND THOSE OF THE PARTIES.

**THE COURT:**  ALL RIGHT.  THAT'S WHAT I'M GOING TO DO. THERE'S NO NEED TO GET INTO OTHER MERITS AND DAMAGES AND STUFF AT THIS POINT.  I THINK WE DO NEED TO RESOLVE THIS THRESHOLD QUESTION.

I WILL ALLOW DISCOVERY.  I WILL PHASE IT OR BIFURCATE IT.  IT SHOULD BE RESTRICTED TO STANDING.  AND, ON THAT NOTE, I WOULD ASSUME MOST OF THIS WOULD BE DOCUMENTARY DISCOVERY, MAYBE -- I DON'T KNOW HOW MANY DEPOSITIONS, BUT I DON'T ENVISION IT'S GOING TO BE NECESSARY TO TAKE, YOU KNOW, DEPOSITIONS OF EVERY PHOTOGRAPHER.  I MEAN, THE DOCUMENTS ARE THE DOCUMENTS, IT SEEMS TO ME.

UNLESS THERE'S CONTRADICTORY, YOU KNOW, AN ALLEGATION OF MODIFICATION BY ORAL AGREEMENT OR SOMETHING, I THINK -- I WOULD ANTICIPATE THIS IS LARGELY A DOCUMENTARY DISCOVERY, NOT NECESSARILY PRECLUDING DEPOSITIONS, BUT THIS WOULD NOT BE A DEPOSITION-HEAVY EXPERIENCE BECAUSE IT'S ONLY PHASE ONE.

WHAT DO YOU NEED?  NINETY DAYS?  NINETY DAYS TO DO THAT?

**MR. CROCKETT:**  YOUR HONOR, MAY I BE HEARD IN RESPONSE

TO WHAT YOU JUST SAID?

**THE COURT:**  YEAH.

**MR. CROCKETT:**  THE ONE THING I WOULD LIKE TO POINT OUT IS THE COURT SCHEDULED A SETTLEMENT CONFERENCE IN THIS CASE.  THAT WAS SUPPOSED TO BE PRETTY SOON.  I CAN'T REMEMBER THE EXACT DATE, BUT WE NEED DISCOVERY ON THE DAMAGES ISSUES IN ORDER TO PARTICIPATE IN GOOD FAITH IN ANY KIND OF SETTLEMENT NEGOTIATIONS.  THERE'S NO REASON WHY THIS CASE CAN'T BE SETTLED WITHOUT THE COURT HAVING TO DEVOTE THE ENORMOUS AMOUNT OF TIME THAT WILL BE INVOLVED IN RESOLVING ALL THESE TECHNICAL LEGAL ISSUES.  BUT IF WE FOREGO DISCOVERY ON DAMAGES, THEN THERE'S NO POINT IN HAVING A SETTLEMENT CONFERENCE OR DISCUSSING SETTLEMENT.

**THE COURT:**  WE COULD LIMIT -- OKAY.  IF WE ARE GOING TO PUT THIS ON -- IF BOTH PARTIES ARE INTERESTED IN PARTICIPATING IN ADR, I DO THINK SOME DISCOVERY REGARDING DAMAGES -- OBVIOUSLY, YOU NEED TO HAVE SOMETHING IN ORDER TO EVALUATE YOUR SETTLEMENT POSITIONS.  ON THE OTHER HAND, IT DOESN'T NEED TO BE THE END-ALL, BE-ALL.

**MR. CROCKETT:**  THE BASIC USAGE INFORMATION.

**THE COURT:**  TO ESTIMATE THE PARAMETERS OF POTENTIAL EXPOSURE, I THINK, IS FAIR.

**MR. ZANSBERG:**  YOUR HONOR, WE HAVE ALREADY EXCHANGED DOCUMENTS.  WILEY HAS PRODUCED 2,782 PAGES OF DOCUMENTS.  MINDEN HAS PRODUCED 1,951.

AS COUNSEL JUST SAID, IF WE DON'T HAVE -- HE STATED THAT IF WE DON'T HAVE ACCURATE POTENTIAL DAMAGES INFORMATION, THERE'S NO POINT IN HAVING A SETTLEMENT CONFERENCE.

AS YOUR HONOR ACKNOWLEDGED IN GRANTING, BASICALLY, AN UNCONTESTED MOTION TO POSTPONE THE SETTLEMENT CONFERENCE PENDING THE RESOLUTION OF THIS RULING, THERE'S NO LIKELIHOOD OF A SETTLEMENT BEING ACHIEVED WHILE THE ISSUE OF THE PLAINTIFF'S STANDING REMAINS PENDING.

**THE COURT:**  WELL --

**MR. ZANSBERG:**  MY CLIENT IS NOT GOING TO COME TO THE SETTLEMENT CONFERENCE PREPARED TO MAKE SETTLEMENT OFFERS IF IT BELIEVES THAT, ULTIMATELY, WHEN THE COURT DETERMINES THE ISSUE OF STANDING, IT'S GOING TO FIND IT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE OR MANY OF THE PHOTOGRAPHERS' CLAIMS, AND THAT'S WHY THE BIFURCATION OF FIRST ADDRESSING THE ISSUE JUST OF STANDING --

**THE COURT:**  YOU ARE SAYING YOUR CLIENT DOESN'T WANT TO PARTICIPATE IN SETTLEMENT DISCUSSIONS UNLESS WE ADJUDICATE THE STANDING QUESTION FIRST, EVEN THOUGH THERE'S AN -- AS IN ANY SITUATION, THERE ARE RISK FACTORS.  SOMETIMES THERE ARE THRESHOLD RISK FACTORS UP FRONT, BUT THAT DOES NOT NECESSARILY PRECLUDE THE PARTIES FROM TAKING THOSE RISK FACTORS INTO ACCOUNT AND POSSIBLY -- IN COMING UP WITH A SETTLEMENT POSITION.  BUT IF YOUR CLIENT'S POSITION -- I HAVE SEEN THIS BEFORE IN SOME CASES WHERE DEFENDANTS SAY, UNTIL WE HAVE OUR

MOTION TO DISMISS HEARD, WE ARE NOT TALKING SETTLEMENT.

**MR. ZANSBERG:**  YOUR HONOR, I'M FAIRLY --

**THE COURT:**  IS THAT YOUR CLIENT'S POSITION?

**MR. ZANSBERG:**  I'M FAIRLY CERTAIN IT IS.  THAT WAS THE POSITION WE PUT BEFORE THE COURT IN ASKING THE SETTLEMENT CONFERENCE THAT HAD BEEN SCHEDULED FOR APRIL 25TH SHOULD BE POSTPONED.  I WOULD ARGUE IT SHOULD BE POSTPONED FURTHER TO ALLOW THIS ISSUE NOW TO BE RESOLVED, JUST AS IT WAS TO BE RESOLVED AT THIS HEARING.

**THE COURT:**  SO IT TAKES TWO TO TANGO.

**MR. CROCKETT:**  MAY I BE HEARD ON THIS?

**THE COURT:**  YES.

**MR. CROCKETT:**  I WOULD LIKE TO POINT OUT JUDGE ALSUP'S ORDER IN THE *PEARSON* CASE EXPRESSLY STATES IT WAS WITHOUT PREJUDICE TO THE RIGHT OF ALL THOSE INDIVIDUAL PHOTOGRAPHERS TO FILE THEIR OWN LAWSUITS.  IF THIS COURT WERE INCLINED TO FOLLOW THE SAME APPROACH THAT JUDGE ALSUP FOLLOWED, PRESUMABLY, THIS COURT WOULD MAKE THE SAME RULING, THAT THE INDIVIDUAL PHOTOGRAPHERS HAVE THE RIGHT TO BRING THEIR OWN LAWSUITS.  THAT'S WHAT WE ARE REALLY TALKING ABOUT HERE, NOT WHETHER THIS ENTIRE CASE IS NIPPED IN THE BUD, BUT WHETHER WE HAVE ONE LAWSUIT FILED BY MINDEN PICTURES OR 30 SOME LAWSUITS BY EACH ONE OF THE PHOTOGRAPHERS.

I WOULD THINK IT WOULD BE IN EVERYBODY'S INTEREST TO RESOLVE THIS, IF WE CAN, AND BOTH SIDES CAN FACTOR IN THEIR

ANALYSIS OF THE LIKELIHOOD THAT THE COURT IS GOING TO DISMISS THE CASE, OR THAT THERE WILL ULTIMATELY BE A PLAINTIFF'S VERDICT, OR ANYTHING IN BETWEEN, IN EVALUATING ITS SETTLEMENT POSITION.

**THE COURT:** YOU ARE CONTEMPLATING THAT ANY SETTLEMENT AGREEMENT, THAT THE RIGHTS OF THE PHOTOGRAPHERS WOULD BE FOLDED IN; THIS WOULD BE A GLOBAL SETTLEMENT?

**MR. CROCKETT:** ABSOLUTELY, YOUR HONOR.

**THE COURT:** THERE'S SOMETHING TO --

**MR. ZANSBERG:** YOUR HONOR, I WOULD POINT OUT THE COURT'S SUBJECT MATTER JURISDICTION IS NOT SOMETHING THE PARTIES CAN AGREE TO. THE COURT EITHER HAS SUBJECT MATTER JURISDICTION OVER THIS CASE BASED UPON THE CURRENT PLAINTIFF --

**THE COURT:** I HAVEN'T DECIDED THAT I HAVE JURISDICTION. RIGHT NOW THE POINT COUNSEL IS TRYING TO MAKE IS THAT, UNLIKE SOME THRESHOLD MOTIONS LIKE STATUTE OF LIMITATIONS, OR SOMETHING LIKE THAT, EVEN IF YOU WERE TO PREVAIL, THAT DOESN'T END YOUR CLIENT'S EXPOSURE. SO, WHAT HE'S SUGGESTING IS A GLOBAL SETTLEMENT THAT WOULD HAVE VALUE TO YOUR CLIENT REGARDLESS OF THE OUTCOME OF THIS PARTICULAR MOTION, AND THEREFORE, IT WOULD BE IN YOUR CLIENT'S INTEREST TO ENGAGE IN SETTLEMENT TALKS.

**MR. ZANSBERG:** IT WOULD DEFINITELY BE IN MY CLIENT'S INTEREST TO ENGAGE IN SETTLEMENT TALKS, BUT I BELIEVE THAT MY CLIENT IS OF THE VIEW THAT UNTIL IT KNOWS HOW MUCH -- WHETHER

IT'S A STATUTE OF LIMITATIONS ISSUE OR STANDING ISSUE, HOW MANY OF THESE PHOTOGRAPHERS, IF ANY, CAN BE REPRESENTED IN THE ACTION.  A LATER-FILED ACTION BY THE 36 PHOTOGRAPHERS WHOSE WORKS ARE AT ISSUE IN THIS CASE WOULD BE SUBJECT TO ALL KINDS OF STATUTE OF LIMITATIONS ISSUES DIFFERENT THAN THE PRESENT ACTION BECAUSE THAT ACTION HADN'T BEEN FILED YET.  CLEARLY, THOSE PHOTOGRAPHERS ARE ON NOTICE OF THESE CLAIMS.

SO, THE PRESENT ACTION IS THE ACTION THAT -- FOR WHICH A SETTLEMENT CONFERENCE HAS BEEN SET, AND I THINK IT WOULD BEHOOVE ALL OF THE PARTIES TO POSTPONE THAT UNTIL AFTER THIS INITIAL PHASE, JUST AS WAS TO BE DECIDED TODAY, THE QUESTION OF WHETHER OR NOT THIS COURT HAS JURISDICTION AND WHETHER OR NOT THE PLAINTIFF IN THIS ACTION, MINDEN PICTURES, CAN PROCEED ON ANY OF ITS CLAIMS.

**THE COURT:**  BEFORE I MAKE THAT DECISION, I WANT TO KNOW WHAT -- HOW LONG A DISCOVERY, IF WE DO PHASE THIS IN TERMS OF CONCENTRATING ON STANDING ON THE MERITS, THE MERITS HAVE STANDING QUESTION, AND TWO, WHATEVER ADDITIONAL HIGH-LEVEL DAMAGES DOCUMENTS, NOT COMPLETE TRIAL DISCOVERY, BUT JUST ENOUGH TO INFORM DISCOVERY TO INFORM THE MEDIATION PROCESS, WHAT WOULD YOU NEED?  HOW MANY DAYS -- HOW LONG WOULD YOU NEED?

**MR. CROCKETT:**  COUNSEL?

**MR. ZANSBERG:**  ONLY BECAUSE -- AND I HESITATE TO SAY THIS, BUT I HAVE A SABBATICAL PLANNED FOR MID JUNE UNTIL LATE JULY.  SO WHILE 90 DAYS SEEMS LIKE AN APPROPRIATE WINDOW OF

TIME TO CONDUCT THIS DISCOVERY, I WOULD ASK IT ACTUALLY BE EXTENDED TO 120 DAYS TO ACCOMMODATE.  I APOLOGIZE.

**THE COURT:**  SO THAT WOULD BE LIKE SEPTEMBER, MID SEPTEMBER?

**MR. ZANSBERG:**  YES, YOUR HONOR.

**MR. CROCKETT:**  YOUR HONOR, ALSO, I'D LIKE TO INFORM THE COURT THAT OUR OPENING BRIEF IN THE *MINDEN VERSUS PEARSON* APPEAL IS DUE JULY 1ST.  THAT WILL ADDRESS MANY OF THESE SAME ISSUES; THAT ALL THAT BRIEFING WILL BE OF BENEFIT TO THIS COURT.

**THE COURT:**  ALL RIGHT.  SO SOUNDS LIKE IF WE ARE GOING TO GO FORWARD WITH THE PLAN ABOUT SETTING THIS UP FOR SUMMARY JUDGMENT WITHOUT DELAY, THAT WE WOULD HAVE DISCOVERY THROUGH, PROBABLY, SEPTEMBER, AND THEN BRIEFING, WHICH WOULD TAKE MOST OF OCTOBER, AND WE WOULDN'T HEAR THIS UNTIL NOVEMBER IT SOUNDS LIKE.

SO, THEN THE QUESTION IS:  SHOULD WE GIVE SETTLEMENT A TRY BEFORE THEN, OR SOMEWHERE IN THAT RANGE, NOTWITHSTANDING THE HESITANCY AND RELUCTANCE ON THE DEFENDANT'S PART?  AT THE END OF THE DAY, I CAN ORDER SOMEBODY TO A SETTLEMENT CONFERENCE, BUT IF THEY ARE NOT WILLING TO DANCE, I AM NOT SURE WHAT WE ACCOMPLISH.

**MR. CROCKETT:**  YOUR HONOR, IN MY EXPERIENCE -- WELL, FIRST OF ALL, THE COURT FELT THAT IT WAS WORTHWHILE TO ASSIGN A MAGISTRATE JUDGE TO CONDUCT A SETTLEMENT CONFERENCE IN THIS

CASE. I AM WELL AWARE THAT IS NOT DONE ROUTINELY, AND THESE MAGISTRATE JUDGES ARE EXTREMELY BUSY, AND THAT THE FACT THAT THE COURT ASSIGNED A MAGISTRATE JUDGE FOR A SETTLEMENT IN ITSELF IS A SIGNIFICANT INDICATION OF THE COURT'S VIEW.

NOW, IN MY EXPERIENCE, ONCE PARTIES GET INTO A SETTLEMENT CONFERENCE OR A MEDIATION, THEY START TALKING TO A MAGISTRATE JUDGE, OR A TRIAL JUDGE, OR A MEDIATOR ABOUT THE PROS AND CONS OF SETTLEMENT, THEY LOOK AT THE ACTUAL NUMBERS INVOLVED, THE LITIGATION EXPENSES INVOLVED, MANY TIMES A CASE CAN BE SETTLED WHEN INITIALLY IT DIDN'T APPEAR LIKELY THAT WOULD HAPPEN.

NOW, IT REQUIRES BOTH SIDES TO ENTER IN A SPIRIT OF GOOD FAITH. I CAN ASSURE YOU THAT THE PLAINTIFF WOULD ENTER INTO A SETTLEMENT CONFERENCE WITH A SPIRIT OF GOOD FAITH. THEY WOULD LIKE TO SETTLE THIS CASE; THE SOONER THE BETTER.

**THE COURT:** HERE'S WHAT I AM GOING TO DO: I AM GOING TO ORDER THAT PHASE I DISCOVERY ON STANDING MOVE FORWARD NOW. ANY ADDITIONAL DOCUMENTATION OR DISCOVERY AT A HIGH LEVEL MAY ALSO BE TAKEN WITH PURPOSES OF PREPARING FOR MEDIATION, NOT FOR TRIAL, THAT THAT BE COMPLETED BY SEPTEMBER -- I'LL JUST SAY 15TH, WHATEVER THAT IS, AND THAT THE PARTIES BE PREPARED TO START BRIEFING IN OCTOBER -- LET'S SEE.

THAT WOULD BE MAYBE OCTOBER 3RD, WHICH WOULD IMPLY A HEARING DATE -- THEN THAT'S THE OTHER QUESTION, IF WE ARE GOING TO DO CROSS BRIEFING, OR NOT IF. SO I WOULD LIKE TO DO

STAGGERED BRIEFING WITH FOUR BRIEFS AND NOT SIX BRIEFS.

**MR. CROCKETT:** I WOULD SUGGEST EACH SIDE FILE AN OPENING BRIEF, YOUR HONOR, SIMULTANEOUSLY, AND EACH SIDE FILE A RESPONSE, SAY, TWO WEEKS LATER.

**THE COURT:** AND NO REPLIES?

**MR. CROCKETT:** CORRECT.

**THE COURT:** ALL RIGHT. SO OCTOBER 3RD. AND THEN IT WOULD BE -- YOUR OPENING BRIEF, AND THE 17TH WOULD BE THE RESPONSES. THEN THE HEARING WOULD BE ON THE 31ST.

IN THE MEANTIME, I AM GOING TO REFER YOU BACK TO JUDGE VADAS TO HAVE A CONFERENCE CALL WITH YOU ALL TO TALK ABOUT THE PROS AND CONS. I AM GOING TO LEAVE IT TO HIS JUDGMENT AS TO WHETHER HE BELIEVES, IN LIGHT OF EVERYTHING WE'VE DONE TODAY AND YOUR DISCUSSIONS WITH HIM, WHETHER IT IS WORTHWHILE, MAKES SENSE TO HOLD A SETTLEMENT CONFERENCE.

**MR. CROCKETT:** THANK YOU, YOUR HONOR.

**THE COURT:** AND, YOU KNOW, YOU WILL GO TO HIM WITH SOME KNOWLEDGE. I'VE ALREADY INDICATED MY INCLINATION WITH RESPECT TO SOME OF THESE ISSUES. WE'VE NOW REFRAMED SOME OF THIS STUFF. SO, PERHAPS IT WILL BE HELPFUL. I WILL REFER IT BACK TO AND ASK YOU -- I WILL ASK HIM TO SET UP A CONFERENCE CALL WITH YOU ALL TO TALK ABOUT THE POSSIBILITY OF FURTHER -- OF A SETTLEMENT CONFERENCE.

**MR. ZANSBERG:** YOUR HONOR, SO YOU KNOW, WE HAVE A STATUS CONFERENCE WITH THE MAGISTRATE ON MAY 21ST AT 1:00 P.M.

THE COURT:  PERFECT.

MR. ZANSBERG:  IT'S ALREADY SET.

THE COURT:  ALL RIGHT.  I AM GOING TO LET HIM KNOW WHAT WE'VE DONE HERE.  THAT WILL BE ON HIS PLATE AT THAT POINT.

ALL RIGHT.  SO THE 31ST WE ARE OPEN, RIGHT?  WE'LL SET THAT 31ST AS A STATUS, AS WELL AS A HEARING ON THE MOTION FOR SUMMARY JUDGMENT.

WE'LL SEE YOU THEN.

MR. CROCKETT:  THANK YOU, YOUR HONOR.

MR. ZANSBERG:  IF I COULD, JUST ONE THING?

THE COURT:  YEAH.

MR. ZANSBERG:  AND MAYBE WE WOULD SEEK THIS CLARIFICATION BEFORE THE BRIEFING.  IT'S JUST ON THE QUESTION OF THE COLLATERAL ESTOPPEL EFFECT ON THE ASSIGNMENT AGREEMENTS. IS OUR --

THE COURT:  YEAH, BECAUSE YOU'VE ALREADY BRIEFED THE OTHER STUFF.  THERE'S NOTHING NEW IN THAT REGARD.  IF THERE'S SOME NEW FACT THAT COMES OUT -- BUT I REALLY WANT TO CONCENTRATE ON THE ASSIGNMENT -- I MEAN, NOT ASSIGNMENT -- ON THE AGENCY AGREEMENT.

MR. ZANSBERG:  THAT'S WHAT I UNDERSTAND AS WELL.

THE COURT:  I ALREADY HAVE THE BRIEFING.  I ALREADY HAVE THE OTHER STUFF.  I DON'T REALLY NEED FURTHER BRIEFING ON THAT.  OKAY.

MR. ZANSBERG:  THANK YOU, YOUR HONOR.

**THE COURT:**  ALL RIGHT.  THANK YOU.

(PROCEEDINGS ADJOURNED AT 2:25 P.M.)

## CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 12-4601 EMC, MINDEN PICTURES V. WILEY, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.



_____

/S/ JOAN MARIE COLUMBINI, CSR 5435, RPR

THURSDAY, JUNE 13, 2013