UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINDEN PICTURES, INC., | No. C-12-4601 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| JOHN WILEY & SONS, INC., | |
| Defendant. | **(Docket Nos. 62, 63)** |

## I. INTRODUCTION

In this action, Plaintiff Minden Pictures, Inc., a stock photography agency, brings suit against Defendant John Wiley & Sons, Inc. ("Wiley"), an educational publisher, alleging copyright infringement for exceeding usage restrictions in photograph licensing agreements. Before the Court are the parties' cross-motions for summary judgment. The sole issue raised by these motions is whether Minden has standing under the Copyright Act to assert the claims raised in this case. The Court previously dismissed Minden's claims to the extent it relied upon certain copyright assignments to establish standing. However, the various photographers entered into agency agreements with Minden, and the Court ordered the parties to conduct discovery and file cross-motions for summary judgment as to whether these agency agreements convey standing on Minden. For the following reasons, the Court concludes that Minden does not have standing to assert claims for copyright infringement under the Copyright Act and accordingly **GRANTS** Wiley's motion for summary judgment.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Minden is a stock photography agency that licenses photographs to publishers, including Wiley. Compl. ¶ 2. Minden specializes in providing wildlife and nature photos. Decl. of Richard L. Minden ("Minden Decl.") ¶ 3 (Dkt. No. 63-2). In 1997, Minden licensed a number of photographs to Wiley for use in several educational publications. Compl. ¶ 8. These licenses limited the number of copies, the distribution area, language, duration, and media employed. *Id.* In the instant action, Minden alleges that Wiley infringed the copyrights in the licensed photographs by exceeding the limitations imposed in the licenses. *Id.* ¶¶ 13-15, 27-35. In a prior order, this Court granted Wiley's motion to dismiss, finding that certain copyright assignments upon which Minden relied were insufficient to convey standing on it to pursue these claims. *See* Dkt. No. 50; *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2013 WL 1995208 (N.D. Cal. May 13, 2013). Minden asserts, however, that it has standing to assert its copyright infringement claims on the basis of agency agreements it entered into with the 37 photographers whose photographs are at issue in this action. The terms of each operative agency agreement are similar in material respects, with some variance in the specifics of the agreements.

The agency agreements grant Minden the power to issue licenses to third parties to use and display the photographer's images. For example, the "Photographer's Agency agreement for the Licensing of Rights Managed Stock Photographs" Minden entered into with photographer Jim Brandenberg in 2007 provides that Minden is authorized to do the following:

> 2.    AUTHORIZATION
>
> 2.1    Photographer, appoints MP&A [Plaintiff] as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, or those which are Essentially Similar, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images, nor those which are Essentially Similar, except as provided under this Agreement.
>
> 2.2    Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.
>
> 2.3    Photographer grants Agency [Plaintiff] the right to appoint and contract with sub-agents regarding the Licensing of

> Images in the Territory. Agency shall have the unrestricted, exclusive right to distribute, License and/or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement. Photographer will insure that no other parties will License reproduction rights to any images which are identical to or Essentially Similar to any Images.
>
> 2.4   All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

Dkt. No. 63-4, at 18; *see also, e.g.*, Dkt. No. 63-3, at 14-15 (2005 agreement between Minden and Ingo Arndt providing essentially the same); Dkt. No. 63-3, at 24-25 (2000 agreement between Minden and Bob Barbour providing the same); Dkt. No. 63-12, at 145-46 (2000 agreement between Minden and Charles Nicklin providing the same). The agreements generally define licensing "as the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof. This Agreement specifically does not provide for Agency to engage in 'Royalty Free' licensing of images." Dkt. No. 63-4, at 17.

In addition to granting Minden the authority to license others to use/reproduce the photographs in question, the agency agreements also give Minden the authority to use the images directly for *promotional* purposes. For example, Section 9.1 of the agency agreement with Bob Barbour provides that Minden "shall have the right and sole discretion to reproduce and use any Images for Promotions in any and all media without compensation to the Photographer." Dkt. No. 63-3, at 27. Further, Minden is given the "unrestricted right and sole discretion to make Duplicates of any Images" as "required to distribute Images." Dkt. No. 63-3, at 37 (2003 agreement between Minden and Fred Bavendam). Copyright ownership of the duplicates, however, is expressly stated to "remain with the Photographer" and, if the Photographer so requests, Minden is obligated to destroy the duplicates at the termination of the agreement. *Id.*; *see also* Dkt. No. 63-3, at 18 (same); Dkt. No. 63-8, at 7 (same).

Each agreement includes limitations on Minden's ability to issue licenses. For example, the agreement between Minden and Arndt provides:

> 2.5.1 All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer.
>
> 2.5.1.1 the grant of rights in perpetuity
> 2.5.1.2 the grant of total exclusive rights
> 2.5.1.3 the purchase or buyout of all rights

Dkt. No. 63-3, at 15. The agreement between Minden and Barbour includes similar limitations, as well as the limitation that Minden may not issue licenses for the "limited or unlimited edition photographic prints other than for museum display" nor for use of images in books "of which greater than 50% of the total are by Photographer" without prior written permission by the photographer. Dkt. No. 63-3, at 25.

In addition, the agreements, to varying degrees, provide that the photographers retain the right to use (and license others to use) the images. For example, the agreement between Minden and Jim Brandenburg provides:

> 2.5.3 Photographer may use Images for personal promotion, other personal projects, and editorial and commercial licensing to third parties provided any such use is communicated to and cleared with MP&A by providing all relevant data on a Minden Pictures rights clearance form . . . to insure all uses and Licenses of Photographers's images are communicated to and recorded by MP&A.

Dkt. No. 63-4, at 18. Similarly, the agreement between Minden and Carr Clifton provides:

> 2.7 Photographer shall have the unlimited, unrestricted right to license the Images, throughout the Territory, through his office without Agency's permission, except as provided for in this Agreement. All images shall remain the sole and exclusive property of the Photographer, without limitation, including the copyright. Agency's rights are solely for licensing purposes only as described herein.

Dkt. No. 63-5, at 12.

Finally, the agreements speak directly to copyright ownership, and they all provide that the *photographers* will retain ownership of the copyright in the images covered by the agreements. Thus, the agreement with Brandenburg states simply that "All images shall at all times remain the sole and exclusive property of the Photographer, including the copyright." Dkt. No. 63-4, at 20. Other agreements include this language but with the added proviso that the copyright "shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to

4

1 register such Images for copyright protection in Photographer's name and the benefit of
2 Photographer. The costs of copyright registration shall be shared equally between Agency and
3 Photographer." *See, e.g.*, Dkt. No. 63-3, at 36.

### III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 428-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Minden, as Plaintiff in this action, has the burden of establishing that it has standing to pursue this action. *See Wash. Evmtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) ("The plaintiff . . . bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" (citation omitted)).

A. <u>Statutory Framework</u>

Under 17 U.S.C. § 501, only the "legal or beneficial owners of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owners of it." *See also Silvers v. Sony Pictures Entert., Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (en banc) ("To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright.'"). The exclusive rights, the ownership of which confers standing to pursue a copyright infringement action, are articulated in 17 U.S.C. § 106. This provision provides:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

*Id.* "[T]he list of exclusive rights found in § 106 is exhaustive . . . . If a right is not 'specified,' then it is not one of the exclusive rights granted by Congress." *Silvers*, 402 F.3d at 886-87.

Section 501 grants standing to any legal or beneficial owner of "*an* exclusive right." 17 U.S.C. § 501 (emphasis added). A direct implication of this language is that the different exclusive rights listed in § 106 may be owned by separate parties. Section 201 makes this explicit. Specifically, subsection (d) provides:

> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.
>
> (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified in section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d). Accordingly, the "exclusive rights" may be "unbundled" and transferred independently of the other exclusive right and any owner of an "exclusive right" may sue for infringement. *See Silvers*, 402 F.3d at 886 ("Congress wanted to ensure that an *owner* of *any exclusive right* in the copyright was entitled to bring a suit for infringement. Congress foresaw a permissible division of exclusive rights; the owner of any one of those exclusive rights may sue,

with other owners being entitled to notice and joiner.  In this sense, Congress intended to 'unbundle' the exclusive rights." (emphases added)).

Further, "exclusive rights may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small." *Id.* at 887.  For example, the *Silvers* Court spoke of an author of a novel giving one party the copyright to the book while giving a different party the right to develop the book into a screenplay.  *Id.*  Subdivision appears to be possible based on form of production, geographic territory, or duration.  As the Seventh Circuit has recognized:

> HyperQuest is correct to observe that subdivision is possible.  The typical example is that of the author of a novel who gives an exclusive license for the hardcover edition to one person and an exclusive license for the movie version to a second.  But it appears that these subdivisions must be done cleanly, so that the limits of each holder's rights can be defined.  Perhaps for that reason, rights are usually subdivided along geographical lines or distinctions among forms of production.

*HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011) (citations omitted); *see also Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1292 n.22 (11th Cir. 2011) ("[A] copyright owner can assign one, several, or all of its exclusive rights, and this assignment can be subject to temporal or geographic limitations.").

Finally, § 101 defines "transfer of copyright ownership" as an "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright . . . but not including a nonexclusive license."  17 U.S.C. § 101.

B.   The Agency Agreements Do Not Convey Standing Upon Minden

Minden argues that the agency agreements convey standing upon it under the Copyright Act because they convey co-ownership interests in § 106 exclusive rights.  Specifically, Minden claims the agency agreements "conveyed to Minden the rights to do, and to authorize, the following: to reproduce the copyrighted works in copies; to distribute copies of the work to the public; and to display the work publically."  Minden Mot. for Summary Judgment ("Minden MSJ") at 1-2, Dkt. No. 63.  Minden claims that the "most important and undeniable incident of ownership evidenced by

all [the agency agreements] is Minden's *authority to issue licenses* permitting third parties . . . to reproduce, distribute, and display the images." *Id.* at 15.  The Court disagrees.  Because the agency agreements do not make Minden a legal or beneficial owner of any exclusive right under the Copyright Act, Minden lacks standing to pursue this action.

        1.      <u>The Agency Agreements and the Parties' Subsequent Conduct Expressly State that the Photographers Would Remain the Sole Owner of the Copyrights in the Images</u>

As an initial matter, the agency agreements expressly state that the photographs shall "remain the sole and exclusive property of the Photographer, including the copyright."  This is evidence that the parties did not intend the agency agreements to convey to Minden any ownership interest in the copyright.  The reason is straightforward: If the parties had intended Minden to obtain an ownership interest in the copyright, the images would not be the "sole and exclusive property" of the photographer.  Under 17 U.S.C. § 101, a transfer of copyright ownership not only needs to be in writing, but it also must be clear and unambiguous.  *See, e.g.*, *Weinstein Co. v. Smokewood Entmt. Croup, LLC*, 664 F. Supp. 2d 332, 338 (S.D.N.Y. 2009) ("[T]he intention of a copyright owner seeking to transfer an ownership interest must be clear and unequivocal."); *Bieg v. Hovnanian Enters., Inc.*, 157 F. Supp. 2d 475 (E.D. Pa. 2001) ("The requirements for a valid transfer of copyright ownership are simple: a transfer document must be in writing and signed, and it must be clear.").  As the Ninth Circuit has held, "[i]f the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." *See Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).  Far from a clear and unambiguous statement of intent to transfer copyright ownership to Minden, the agency agreements appear to expressly disavow any such intent.

Further, the parties' conduct subsequent to the execution of the agency agreement provides further evidence that the photographers did not intend the agency agreements to confer any copyright ownership interest.  As recognized by this Court in its prior order, Minden and the photographers executed a series of copyright assignments in 2012, prior to the filing of this suit.  *See Minden*

*Pictures*, 2013 WL 1995208, at *3.[1] These copyright assignments began with the following statement: "The undersigned, *the sole owner of the copyrights in the undersigned's images . . . selected by Minden Pictures, Inc. . . . and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images.*" *Id.* (emphasis added)  In sending the copyright assignment to one photographer, Larry Minden (owner of Minden Pictures) stated the following in an email:

> In order for us to have legal standing in US courts to claim damages for you, we must be assigned at minimum co-ownership of copyrights to function on your behalf.  The attached document does this.  I have revised and sent a new much more limited form than sent earlier, hoping you'll find this easier to sign.
>
> Basically, the new form assigns co-ownership of specific images for the specific purpose of this legal challenge against this one company and only for the time required to complete the challenge.
>
> This case has the potential of yielding $10,000s for you.  But I can only represent your position oif [sic] you sign this document.  Otherwise I will have to drop your images from the case.

Dkt. No. 64-16, at 2.

The copyright assignments and Mr. Minden's email reflect that *both* the photographers and Minden believed that the existing agreements between the parties did not convey to Minden an ownership interest in the images in question.  The copyright assignments affirmed that the photographers are the "sole owner of the copyrights" – an affirmation that belies any claim that the photographers intended (or believed) that the prior agency agreements had already transferred a co-ownership interest.  Further, Mr. Minden's email to the photographer – quoted above – reveals his belief that the agency agreements did not convey any co-ownership interest *and* suggests that at least that photographer had expressed concerns about the possibility of transferring ownership to Minden.  Under California law,[2] the mutual intent of parties to a contract may be determined, *inter alia*, from

---

[1] The Court ultimately concluded that Minden could not assert standing based on these copyright assignments – either on the ground that they conveyed nothing but a bare right to sue or that Minden was collaterally estopped from raising this argument as a result of Judge Alsup's order in *Minden Pictures, Inc. v. Pearson Educ., Inc.*, C11-05385 WHA, 2013 WL 812412 (N.D. Cal. Mar. 5, 2013).  *See Minden*, 2013 WL 1995208, at *7.

[2] The agency agreements expressly provide that it was to be interpreted according to the laws of the State of California.

the subsequent conduct of the parties. *See In re Imperial Credit Indus., Inc.*, 527 F.3d 959, 966 (9th Cir. 2008); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) ("We rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy."). Here, the subsequent statements and agreements between the parties expressly state what the agency agreements themselves strongly imply: that the photographers would remain the "sole owner" of the copyright even after the agency agreements.

2. <u>Minden Is Not an Exclusive Licensee Under the Agency Agreements</u>

Under § 101, one mechanism for transferring ownership of an exclusive right is through an exclusive license. 17 U.S.C. § 101. An "exclusive" license is "[a] license that gives the licensee the sole right to perform the licensed act . . . and that prohibits the licensor from performing the licensed act and from granting the right to anyone else."*Black's Law Dictionary* 1003 (9th ed. 2009); *see also Corbello v. DeVito*, 832 F. Supp. 2d 1231, 1244 (D. Nev. 2011) ("[T]he difference between 'exclusive' and 'nonexclusive' licenses concerns the continuing ability of the grantor to use or further license to others the licensed property during the period the license is in effect."). Here, Minden has expressly conceded that it is not an exclusive licensee of any § 106 exclusive right. *See, e.g.*, Transcript of Proceedings, May 9, 2013, at 7:10-11 ("The answer to that is no, Minden does not contend it is an exclusive licensee . . . ..") (Dkt. No. 52); *id.* at 15:10-13 ("In almost every case the photographer retained the right to sell his own licenses, so they are not an exclusive – they don't – Minden did not have an exclusive license.").[3]

Minden argues that the fact it is not an exclusive licensee does not deprive it of standing because § 101 broadly defines "transfer of copyright ownership" as "any other conveyance,

---

[3] In its motion for summary judgment, Minden states (in tension with its earlier concession), that "[i]t is true that many of the Stock Photo Agreements likely qualify as exclusive licenses, including for example, the Monteath Agreement." Minden MSJ, at 20. However, it then states that it does not contend that "*all* of the Stock Photo Agreements qualify as exclusive licenses for the simple reason that it need not do so." *Id.* It is apparent from Minden's argument that it is seeking to establish that *all* of the agency agreements have conveyed co-ownership rights to it and it has expressly disclaimed any reliance on an exclusive license theory. Further, even if there are examples of agency agreements which arguably constitute exclusive licenses, Minden has not adequately presented this argument. Given Minden's concession and the arguments it has actually advanced, the Court will not, on its own, review every one of the numerous licensing agreements at issue in this case to determine whether any one agreement creates an exclusive license. Minden advances only a broader all-or-nothing argument.

10

alienation, or hypothecation, of a copyright or of any of the exclusive rights comprised in a copyright." 17 U.S.C. § 101; Minden Opp. at 5. Minden is correct – although it is not an exclusive licensee and thus cannot claim an ownership interest thereunder, an exclusive license is but one way for ownership interests to be conveyed. Accordingly, the Court now turns to whether the agency agreements otherwise constitute a "conveyance, alienation, or hypothecation" of one of the § 106 exclusive rights.

### 3. The Agency Agreements Do Not Convey to Minden any Co-Ownership Interest in a § 106 Exclusive Right

Conceding it is not an exclusive licensee, Minden relies instead on its power to issue licenses under the agency agreement as evidence that the agency agreements convey an ownership interest. For example, in its summary judgment motion, Minden asserts:

> The power to grant licenses, like the licenses Wiley admits Minden issued to Wiley, is an incident of copyright *ownership* – by definition, only an *owner* may grant a third party to do what owners alone enjoy the right to do." Minden MSJ at 2.

Similarly, in its opposition to Wiley's summary judgment motion, Minden contends:

> "[T]he power to grant licenses is an unmistakable incident of copyright ownership . . . . Many courts have therefore recognized two related principles: (1) when a copyright owner – like each of the photographers in this case – transfers the right to grant licenses to someone like Minden, the transferee is necessarily an owner of copyright with standing to sue; and by contrast, (2) a party who is merely a nonexclusive licensee has no power to grant sublicenses." Minden Opp. at 8.

Accordingly, Minden rests its standing argument squarely on its power to authorize third parties to reproduce, display, and distribute the images in question – *i.e.*, to act as a licensing agent. The Court concludes, however, that, taking the agency agreement as a whole, the agency agreement does not convey to Minden an *ownership* interest in any § 106 exclusive right.

#### a. That Minden Has the Power to Authorize Third Parties to Exploit the Images Does Not Make Minden a Co-Owner of any Exclusive Right § 106

Minden's fundamental premise – that only a copyright owner or co-owner can have the power to issue licenses or otherwise authorize third parties to exploit a copyrighted work – is

11

incorrect. Even a non-exclusive licensee – someone with no ownership interest at all[4] (*see* 17 U.S.C. § 101; *see also Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ("A non-exclusive license conveys no ownership interest . . . .")) may issue sublicenses authorizing a third party to exploit a copyrighted work if expressly authorized to do so by the copyright owner. *See PlayMedia Sys., Inc. v. Am. Online, Inc.*, 171 F. Supp. 2d 1094, 1099 (C.D. Cal. 2001) ("A non-exclusive license such as Nullsoft/AOL has 'no right to re-sell or sublicense the rights acquired *unless he has been expressly authorized to do so*,'" (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir. 1984) (emphasis added)). Thus, the power to issue licenses can be exercised not only by a copyright owner, but also by a properly authorized non-exclusive licensee (who by statute lacks an ownership interest in a copyright). Accordingly, the fact that the agency agreements authorize Minden to issue licenses to third parties does not establish Minden as a co-owner of the copyrights in those images.

More to the point, a number of courts have found that licensing agents are neither legal nor beneficial owners of a copyright. *See, e.g.*, *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. l993) ("A licensing agent is neither the legal nor the beneficial owners of the copyright and has no interest in the copyright."); *Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.*, 115 F.R.D. 303, 304 (D. Neb. 1987) (holding that a licensing agent "is not the legal or beneficial owner of the copyright"). Additionally, courts have refused to find standing under the Copyright Act even where the plaintiff appeared to be the *exclusive* licensing agent. *See Plunket v. Doyle*, No. 99 CIV 11006 (KMW), 2001 WL 175252, at *5 (S.D.N.Y. Feb. 22, 2001) (finding that a plaintiff who claimed to have the "exclusive worldwide rights to manage, as well as to negotiate, license, and otherwise cause and permit the exploitation" of all rights as to Arthur Conan Doyle's works lacked standing under the Copyright Act)*; Original Appalachian Artworks, Inc*, 679 F. Supp. at 1572 (rejecting plaintiff's argument that the "exclusive right to authorize others to use OAA's copyright must in itself be a copyright within section 106 and, thus, protected by section 501").

---

[4] A non-exclusive license is an arrangement in which the copyright owner does not convey ownership of the copyright, but "simply permits the use of a copyrighted work in a particular manner." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).

In *Premier Tracks, LLC v. Fox Broadcasting Co.*, No. 12-cv-01615 DMG, Dkt. No. 41 (C.D. Cal. Dec. 18, 2012), the plaintiff had entered into written agreements with "the music libraries it administers conferring to [it] exclusive copyright rights including exclusive rights to grant non-exclusive licenses" for the works to be used. *Id.* at 8. The district court found that plaintiff lacked standing because "[t]he exclusive right to grant licenses for others to publicly perform or reproduce a work is separate and distinct from the exclusive right to publicly perform or reproduce a work itself." *Id.* Accordingly, the court concluded that "licensing agents are not legal owners of section 106 exclusive rights and do not have standing to sue for copyright infringement." *Id.* at 9.

The Court agrees with the reasoning in *Premier Tracks* and finds that the power to issue non-exclusive licenses authorizing third parties to exploit a copyright is not itself an exclusive right under § 106. The right to license to others (in contrast, *e.g.*, to the exclusive right to reproduce or distribute the copyrighted work) is not an enumerated, exclusive right in § 106.

The main case upon which Minden relies in opposition to this point is not to the contrary. In *Warner/Chappell Music, Inc. v. Blue Moon Ventures*, No. 3:10-1160, 2011 WL 662691 (M.D. Tenn. Feb. 14, 20011), the district court, in the context of granting a preliminary injunction, found that the plaintiff had standing under the Copyright Act. The agreement at issue was an "Exclusive Administration Agreement" which provided, in part:

> Although it is intended that we and our foreign subsidiaries, affiliates and licensees have the fullest possible rights to (1) *administer and exploit* the [Subject Compositions], utilize your name and approved likeness in connect therewith; (ii) *grant non-exclusive* life-of-copyright licenses for uses of the [Subject Compositions] . . . .

*Id.* at *5 (emphasis in original). The court found this language sufficient to establish standing: "The language giving Plaintiff the right to administer and exploit the copyrights, as well as the ability to further grant non-exclusive licenses gives them power of an exclusive licensee over at least two of the six rights in section 106." *Id.* The court continued: "the fact that Plaintiff is able to itself grant nonexclusive licenses weighs in favor of the fact that they are beneficial owners of the copyrights in question." *Id.* This case is distinguishable on two grounds: first, as the court in *Warner/Chappell Music* found, the plaintiff there was an *exclusive licensee*. While exclusive licenses are conveyances of copyright ownership interests by statutory definition under § 101, Minden has conceded (as

13

discussed above), that the agency agreements are *not* exclusive licenses. Second, the plaintiff in *Blue Moon* had not only the power to issue licenses, but the "fullest possible rights" to exploit the compositions in question. Finally, the *Blue Moon* court held that while the power to grant nonexclusive licenses "weighs in favor" of finding a beneficial ownership interest, it did *not* hold that this power was sufficient on its own to find such an interest.

Furthermore, even if an exclusive right to issue licenses as an exclusive licensing agent were sufficient to confer ownership, Minden had no such exclusive right. Minden concedes it does not have the *sole* right to issue licenses (or to distribute, use, or otherwise exploit) the images in question; it has acknowledged that photographers retain the rights to issue their own licenses. *See* Dkt. No. 52, at 15:10-13 ("Well, in almost every case the photographer retained the right to sell his own licenses, so they are not an exclusive – they don't – Minden did not have an exclusive license.").

The Court's conclusion that the agency agreements do not convey ownership is underscored by the fact that a transfer of copyright ownership must be express and clear. *See, e.g.*, *Weinstein Co.*, 664 F. Supp. 2d at 338 (S.D.N.Y. 2009); *Bieg v. Hovnanian Enters., Inc.*, 157 F. Supp. 2d at 483. The Ninth Circuit has recognized that this requirement "forces parties to clarify their thinking" and ensures that a "creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Effects Assocs.*, 908 F.2d at 557. Accordingly, courts have declined to find transfers of ownership where the agreement in question was ambiguous. *See, e.g.*, *Cassway v. Chelsea Historic Properties I*, No. 92-4124, 1993 WL 64633 (E.D. Pa. Mar. 4, 1993) ("Where an ambiguity exists as to whether the copyright interest itself was transferred, the court should construe such contractual provisions in favor of the author retaining his or her copyright."). Here, the only direct statement regarding copyright ownership in the agency agreements themselves is the statement "[a]ll images shall at all times remain the sole and exclusive property of the Photographer, including the copyright." Under these circumstances, the Court finds that Minden has failed to demonstrate a genuine dispute of material fact as to whether the agency agreements represent clear, express transfers of a co-ownership interest in the images.

### b. Minden is not a Co-Owner of an Exclusive Right in Copyrighted Words

To the extent Minden argues it is in effect a co-owner of an exclusive right in the copyrighted works that are the subject of the agency agreements, that argument also fails. As the Ninth Circuit recognized in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), "co-owners are like tenants in common, each owning a share of the undivided whole." *Id.* at 1145. The Ninth Circuit cited a House Report, part of the legislative history of the Copyright Act, which stated that "[u]nder the bill, as under present law, co-owners of a copyright would be treated generally as tenants in common, with each co-owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co-owners for any profits." H.R. Rep. No. 94-1476, at 121 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5736.   Thus, in *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd* 388 F. App'x 721 (9th Cir. 2010), the court stated that "[i]n order to be considered a co-owner of an exclusive license, Plaintiff must in some manner be similarly situated with respect to [the copyright owner], meaning that he has an *independent and equivalent* power to exercise his rights in the License Agreement." *Id.* at 1142. Minden fails to establish the agency agreements confer upon it such independent and equivalent rights; the photographers retain numerous important rights and control over Minden.

In the final analysis, Minden has simply failed to failed to demonstrate that the provisions of the agency agreement do anything more than create a non-exclusive license. The Ninth Circuit described licenses in the copyright context as follows:

> Under our case law interpreting and applying the Copyright Act, too, it is well settled that where a copyright owner transfers a copy of copyrighted material, retains title, limits the uses to which the material may be put, and is compensated periodically based on the transferee's exploitation of the material, the transaction is a license.
>
> It is easily gleaned from these sources of federal copyright law that a license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights.

*F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir 2010) (citations omitted). The agency agreements fit squarely within this definition – they permit Minden to take actions they otherwise would otherwise be the exclusive province of the copyright owner, (use copyrighted

images in their promotions, make duplicates of those images for purposes of distribution, authorize third parties to exploit and use the images), allow Minden to use the images in this way subject to certain limitations, and then provide for the copyright owner (the photographer) to be periodically compensated for that use. At the same time, the agreements permit the photographer to continue his or her own use of the photographs (including their own licensing activity).

### 4. Minden Is Not a "Beneficial Owner" of Any Exclusive Right

As noted above, Section 501 confers standing on a "beneficial owner" of an exclusive right. The Copyright Act does not define what makes an individual the "beneficial owner" of a copyright. The legislative history of the Act, however, provides one example – "a 'beneficial owner' . . . would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5569, 5575.

District courts in the Ninth Circuit have narrowly defined "beneficial owner" as being *only* an individual who had legal title and parted with it in exchange for royalties. For example, in *Ray Charles Foundation v. Robinson*, 919 F. Supp. 2d 1054 (C.D. Cal. 2013), the court stated that a "'beneficial owner' is 'an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.'" (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003)). Similarly, in *Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129 (N.D. Cal. 1987), Judge Conti noted that a "beneficial owner has transferred his exclusive rights over the copyright's use in exchange for an economic interest in proceeds derived from that use." *Id.* at 1131-32. Finally, in the *Premier Tracks* case cited above, Judge Gee stated that "the Ninth Circuit has held that a beneficial owner can only be a former legal owner that assigned his exclusive rights to another in return for royalties." *Premier Tracks*, No. 12-CV-01615 DMG, Dkt. No. 41, at 9.

This narrow approach is also taken by at least one commentator on copyrights. *See* 2 Patry on Copyright § 5:152 n.1 ("A beneficial owner must first have been a legal owner."); *see also id.* ("An author or other owner of copyright who transfers all of his or her exclusive rights may still be considered a 'beneficial owner' if he or she retains an ongoing material financial interest in the

16

1 exploitation of the work."). Nimmer on Copyright never expressly defines what a "beneficial
2 owner" is, but states that "[p]resumably, reference is intended to the general law of trusts in this
3 regard." 3 Nimmer on Copyright § 12.02[D].

4 Minden is not a "beneficial owner" in the images since it is not nor has it been a legal owner
5 of the copyrighted works.

6 B. <u>Wiley Is Not Estopped from Challenging Minden's Alleged Copyright Ownership</u>

7 Minden argues that Wiley is estopped from challenging Minden's ownership because Wiley
8 admits it received licenses from Minden to use the photographs and in fact has raised these licenses
9 as an affirmative defense to Minden's infringement claims. Minden MSJ at 27. This argument is
10 without merit. As discussed above, if properly authorized by the copyright owner, a non-exclusive
11 licensee may issue grant sublicenses. *See, e.g.*, 2 Patry on Copyright § 5:127 ("Since a nonexclusive
12 licensee is not a copyright owner, it may not . . . *absent authorization*, sublicense."). This does not
13 change the fact, however, that a non-exclusive licensee does not have standing under the Copyright
14 Act. Here, the agency agreements in question clearly convey on Minden the authority to issue
15 licenses to use the photographer's photos. Accordingly, there is no inconsistency in Wiley asserting
16 that the licenses issued from Minden are valid and form the basis of an affirmative defense while at
17 the same time arguing that Minden is not a co-owner of an exclusive right under the Copyright Act
18 for purposes of standing.

19 C. <u>The Photographers Will Not Be Permitted to "Ratify" this Action</u>

20 Minden argues that if the Court concludes there is no standing, the Court cannot dismiss the
21 action under Federal Rule of Civil Procedure 17, but rather must find that the photographers have
22 ratified the filing of this action by executing the "subsequent assignments" that were executed after
23 the filing of this lawsuit. Dkt. No. 69, at 24. Minden is incorrect.

24 Federal Rule of Civil Procedure 17(a)(3) provides:

25 **(3) *Joinder of the Real Party in Interest.*** The court may not dismiss
an action for failure to prosecute in the name of the real party in
26 interest until, after an objection, a reasonable time has been allowed
for the real party in interest to ratify, join, or be substituted into the
27 action. After ratification, joinder, or substitution, the action proceeds
as if it had been originally commenced by the real party in interest.
28

17

Courts have rejected the contention that Rule 17(a)(3) permits the "real party in interest" to "ratify" an action brought by a party that does not have statutory standing. For example, in *Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62 (2d Cir. 2013), the Second Circuit found that allowing a party to "enlarge standing in this way would extend the entitlement to sue to a new party that is otherwise unauthorized under the statute at issue to bring suit to enforce whatever rights it may claim." *Id.* at 83. The Second Circuit has also expressly rejected this "ratification" theory under Rule 17 in the context of the Copyright Act. In *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982), *superseded on other grounds by* Fed. R. Civ. P. 52(a), the Court held

> While Federal Rule of Civil Procedure 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, the Copyright Law is quite specific in stating that only the 'owner of an exclusive right under a copyright' may bring suit.

*Id.* at 32 n.3. This approach is consistent with the Ninth Circuit's holding that a copyright owner's assignment of the bare right to sue for infringement is insufficient to give a party standing. *See, e.g.*, *Righthaven LLC*, 716 F.3d at 1169 ("Accordingly, we held en banc in *Silvers* that the assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue."). To allow a copyright owner to "ratify" the filing of an action would be to effectively allow after-the-fact assignment of the bare right to sue.

Consequently, the Court reject's Minden's request for a finding that the photographers have "ratified" this action.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Minden lacks standing to pursue this action, and accordingly **GRANTS** Wiley's motion for summary judgment. "This is a ruling on standing only. It does not bar the photographers themselves from suing [Wiley] on the same claims." *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 971 (N.D. Cal. 2013).

//

//

18

This order disposes of Docket Nos. 62 and 63.

IT IS SO ORDERED.

Dated: January 27, 2014

_____
EDWARD M. CHEN
United States District Judge