Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

| | |
|---|---|
| MINDEN PICTURES, INC., | ) |
| Plaintiff, | ) |
| VS. | ) NO. C 12-4601 EMC |
| JOHN WILEY & SONS, INC., | ) |
| Defendant. | ) San Francisco, California<br>) Wednesday<br>) December 10, 2013<br>) 1:30 p.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:        HARMON AND SEIDMAN, LLC
                      485 Dorset Street
                      Cambria, California 93428
                 BY:  **CHRISTOPHER SEIDMAN, ESQ.**
                      **GREGORY ALBRIGHT, ESQ.**


For Defendant:        LEVINE SULLIVAN KOCH AND SCHULZ, LLP
                      1888 Sherman Street
                      Suite 370
                      Denver, Colorado 80302
                 BY:  **STEVEN ZANSBERG, ESQ.**


*Reported By:*    *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                  *Official Reporter - US District Court*
                  *Computerized Transcription By Eclipse*

P R O C E E D I N G S

**December 10, 2013**                                                    1:39 p.m.

THE CLERK:  Calling Case C12-4601, Minden Pictures versus John Wiley.

Counsel, please come to the podium and state your name for the record.

MR. SEIDMAN:  Your Honor, Christopher Seidman appearing on behalf of the plaintiff, Minden Pictures, Incorporated.

THE COURT:  All right.  Thank you.

MR. ZANSBERG:  And good afternoon, your Honor. Steven Zansberg on behalf of the defendant, John Wiley and Sons.

THE COURT:  Okay.  Good afternoon, counsel.

Let me make sure I understand.  Minden does not claim and it has, in fact, disclaimed that it is an exclusive licensee, is that correct?  That's what was said?

MR. SEIDMAN:  Yes, yes.  We are not relying on the status of exclusive licensee for standing in this case.

THE COURT:  So now what we're talking about is under the agency agreements, whether or not there has been transferal of sufficient ownership to permit standing to certain 106 rights, correct?

MR. SEIDMAN:  Correct.  Either a legal ownership status or beneficial ownership status.

**THE COURT:** All right. I guess the question I have in that regard is, you know, what exactly is -- has been conveyed or authorized or transferred when there are statements that photographers state that they retain ownership, and there doesn't appear to be -- for instance, some indicia of ownership would be having coextensive or equal rights, and that doesn't seem to be consistently true. There are some situations where some kind of permission is required of the photographer or the photographer could do certain things without permission from Minden.

And, plus, there were subsequent actions after the agency agreements in which, for instance, the -- Minden states in some of the assignment agreements that they are the sole -- the sole owner. I mean, there are statements that are made that suggest that -- that even after -- the copyright assignments that were entered after the agency agreements in which the photographer claims, quote, sole ownership of the copyrights in the undersigned images would suggest it is not consistent to say that the agency is an equal co-owner. So how do I deal with that?

**MR. SEIDMAN:** By looking to conduct. I think the cases are pretty clear that labels are not controlling. What we look to is the actual relationship that Minden enjoyed with respect to the photographers.

And whether they mischaracterized their ownership status

by using labels doesn't really inform us as to the actual relationship.

THE COURT:  Aren't the parties' intent, at least, relevant to determine what has been transferred?  I mean, in the end it's a matter of contract interpretation.  Isn't that relevant?

MR. SEIDMAN:  Yes.  The parties' intent is very relevant and, of course, actions would speak to that intent more clearly than labels used by people who, perhaps, aren't as knowledgeable about copyright law.

And as we point out in our response, this issue about the sole owner of copyright and whether then the owner of some subset of rights under the copyright is how you characterize that individual or that entity's ownership is something that Nimmer and Patry can't come to a meeting of the minds about. And, certainly, if they aren't able to, it's a tall bar to require Minden Pictures and 34 photographers to come to.

So what we would say is that you look at what Minden was actually authorized to do and what he actually did do with the photographers' consent, knowledge, participation, which benefited them, benefited Minden.  That's how to figure out what Minden owned, what he received.

THE COURT:  Well, but what he received was, clearly, there was a reservation of certain rights where in the agreement itself, the agency agreement itself, which we need to

construe, says that the images remain the sole and exclusive property of the photographer.

So doesn't that suggest this is a licensing agreement, not a transferal of ownership?

**MR. SEIDMAN:**  Well, we think it's an assignment. It's an assignment of 106 rights.  It's an assignment from the photographer to Minden to allow Minden to exercise the rights that an owner has under 106 to reproduce, distribute and display.

And once Minden obtained those rights and then actually used those rights to reproduce on his own website and in catalogs, to display, to distribute, and to -- we think this is very important -- to authorize others to reproduce and distribute the images, which is a 106 right.

106 says:

"The owner of copyright has the exclusive rights to do and to authorize any of the following."

And then there are six subsection rights to reproduce, distribute, display, prepare derivative works, and two performance rights.  But the ones we're concerned with here are the reproduction and display and distribution rights.

**THE COURT:**  How is that distinguishable in a situation where somebody -- there is -- I understand there is some ambiguity in case law, but there's a number of cases, a priori case that say, even an exclusive licensee does not have

standing to sue and enforce.

So if one were an exclusive licensee, they would be, quote, authorized within the meaning of 106 to sublicense, et cetera, et cetera. And, yet, most Courts seems like they's say that that is not enough.

So what's different here than an exclusive licensee? What more does Minden have?

**MR. SEIDMAN:** Minden has the right to, both itself, copy, distribute and display by reproducing in catalogs and on its own website. It's a stock agency, so it has its own business of selling photographs. It has the right to use the photographers' created images --

**THE COURT:** But does it have the right to display on its own, not just licensed to others?

**MR. SEIDMAN:** Correct. It has it's own website, and it has its own right to produce catalogs, and it has done so on. And then, in addition, it has the right to issue licenses to publishers like Wiley.

Now, that's not something that a non-owner can do. 101 tells us who an owner is. And even though it might not be logically or sort of conveniently or familiarly the way we think of as who an owner is, the Copyright Act tells us who an owner is in 101 and tells us a transfer of copyright ownership occurs when there is a conveyance by any means, any kind of conveyance, regardless of what you call it, whether you call it

a license or an assignment or any other conveyance of any of the 106 rights.

And that's what Minden has.  That's why we think he is an owner by definition in the Copyright Act; not by some kind of common law standards, but by the definition in 101 that allows him status to bring this case under 501, which gives the legal or beneficial owner of an exclusive right under the copyright of -- is entitled to institute an action for any infringement of that right committed while he or she is the owner of it.

So these infringements all occurred while Minden enjoyed the right -- the 106 rights.  He is the -- he is the -- not just a real party in interest, but this whole idea of standing is designed to make sure that the real party-in-interest is in the courtroom.  The party that has the most at stake.  The party -- and to make sure that the defendant doesn't face multiple litigation over the same claim from other potential owners.

And so if you look at the big picture of standing, it makes perfect sense for Minden to be the person or the entity bringing this action.

THE COURT:  Except the photographer appears to retain a number of rights in here; not only claimed ownership, but certain rights of use, certain requirements of -- prior permission by the photographer.

MR. SEIDMAN:  Well, the prior permission rights were

very limited and they were in situations where the photograph involved would have been essentially sold, sold off.  And so, naturally, co-owners would want to collaborate if something like that is going to occur.

But the photographers gave Minden the right to institute this action, so they are not thinking --

**THE COURT:**  It's also true that mere conveyance of a bare right to sue has not been recognized by the courts as a basis for standing.  So that alone is not good enough.

**MR. SEIDMAN:**  You're absolutely correct.  We agree with that completely.

But when you couple Minden's right to bring this action with his right to exercise 106 ownership rights, then you have standing.  You have standing in a very practical sense in the entity, Minden Pictures, Inc., that really ought to be here in the courtroom.

Wiley doesn't want that.  It wants 34 different actions to have to be brought.  Not because it's concerned about Minden overreaching, but because many of the photographers have one claim, a handful of claims.  Whatever number of claims, it's going to be fewer than Minden's claims.  And they are scattered all over the world.

**THE COURT:**  What are Minden's rights with respect to -- put aside the authorization question -- to do one of the six activities that are enumerated in 106?  Isn't the ability

to use the images extremely limited?

Isn't it -- where do I find -- I'm looking at, for instance, the *Candacini* (phonetic spelling), which is probably similar to many others, the stock agency agreement. Where does it say besides being the exclusive agent to license to others, does it say you can use this in any way you want as an owner?

MR. SEIDMAN: Well, that agreement is actually not very characteristic. It's a later agreement.

If I could?

(Brief pause.)

THE COURT: The *Brandenberg* one?

MR. SEIDMAN: Yes. I'll see if I can pull that up here.

THE COURT: That one in particular, even the right to license requires written -- prior written permission from the photographer for retail posters, product endorsements.

MR. SEIDMAN: Right. Minden's area of authorization was for editorial textbook type of uses mostly.

So the law recognizes that the copyright can be sliced up and it can be a very thin slice that an entity like Minden might hold. His slice wasn't actually that thin, but the photographers did hold back some rights to use the images.

Minden had really pretty much the superior position as far as the scope of uses, and then there were carve-outs for what the photographers could also do. But the photographers also in

many instances could do -- could do their own licensing, and that's what's gotten us all, I think, down a path that is confusing regarding the exclusivity of this.

THE COURT:  All right.  It appears non-exclusive in certain areas and very limited in other areas.

MR. SEIDMAN:  Page 21 of 35 of doc 63-4.

THE COURT:  Unfortunately, I don't have that with me, but is there a provision in there that addresses the use?

MR. SEIDMAN:  Nine.

THE COURT:  Paragraph 9?

MR. SEIDMAN:  Yes.

"Agency use of images for promotion.  Subject to
   the terms and conditions of this agreement, Minden
   shall have the right and sole discretion to reproduce
   and use any image for the promotion of Minden
   Pictures in any and all media without compensation to
   photographer."
So --

THE COURT:  What's the first part of that sentence?  Could you read that again?

MR. SEIDMAN:  The heading of it is "Agency Use of Images For Promotion."

THE COURT:  Yes.  And what does it say text-wise?

MR. SEIDMAN:  9.1:
   "Subject to the terms and conditions of this

agreement, MP&A shall have the right and sole discretion to reproduce and use any images for the promotion of MP&A in any and all media without compensation to photographer.

**THE COURT:**  It says "subject to terms and conditions."  Are there other terms and conditions that limit this use?

**MR. SEIDMAN:**  I don't believe there are.  They are limited in terms of the images that are submitted and selected.  They are limited -- you know, there are time limits on the agreement.  They don't last forever, but that's all pretty much standard in the business.

**THE COURT:**  Let me get a response to that.

**MR. ZANSBERG:**  Thank you, your Honor.

First of all, the parties agree that, as your Honor said, this is a question of law.  There is no disputed fact.  This is a matter of contract.  And Minden has repeatedly, again today, conceded that it is not an exclusive licensee under the contract.

And so the question is, as your Honor put it, whether or not the agency agreements conferred ownership interest in the copyrighted works upon Minden sufficient to render it a copyright owner and have standing.

Counsel says that labels are not controlling, but as you just were looking at the agency agreements themselves, we're

not talking about the labels.  We're talking about the provisions of the contracts, which unmistakably make clear that the copyright is retained solely by the photographer in each and every one of these agreements.

It's just -- to say it's counterintuitive would be putting it mildly.  There is absolutely nothing in these agreements that suggests in the slightest way that there was a transference of copyright ownership from the photographers who, in the warranty clause, warrant going into the agreement they are the sole owner of the copyright, and Minden concedes as much since the photographers were the authors.  And at the end of the agreement consummated by the parties, Paragraph 6.2 in most of these agreements state unequivocally and without any qualification that the copyrights in the photographs shall be the exclusive property of the photographers.

The myriad of other restrictions that the Court has noted on the uses permitted by Minden, as any licensee is allowed use of Section 106 rights -- use, but not ownership -- are extensive, including that in the section that Mr. Seidman just noted, Section 9 begins that it is subject to the terms and conditions of this agreement and the right that is bestowed in Section 9 upon Minden to reproduce the images is qualified in several respects, including the previous provision Paragraph 8 that says any duplicates are owned and are the copyright ownership of the photographers.

Yes, they have a right to use copyrighted works.  They just don't take ownership of any of those works.  And that's the difference between a conveyance that gives a plaintiff standing under the Copyright Act and renders one merely a non-exclusive licensee.

The fundamental fallacy of Minden's argument, and it's throughout their opposition brief and their cross motion for summary judgment and the argument made earlier today, is that only an owner of a copyright may authorize others to use and to perform Section 106 rights.  And that is just fundamentally wrong.

And, in fact, they acknowledge that it's wrong in -- in their opposition to motion for -- to Minden's motion for summary judgment on the bottom of page -- hold on.

On the very same page that Minden cites three times the -- this is in Document No. 69, Opposition to Wiley's Motion.  It says:

"A party who is merely a non-exclusive licensee has no power to grant sublicenses."

And later it says:

"A non-exclusive licensee, like Wiley, has no power to grant licenses."

But in Footnote 28 on that very same page, Page 13 of their opposition brief, they cite Patry on copyright that a non-exclusive licensee is not a copyright owner and may not,

absent authorization, sublicense.

It's well established that non-exclusive licensees with authorization can sublicense.  They can authorize others to make use of the works.

It's simply a logical fallacy and error that undermines the entirety of Minden's argument that only copyright owners have the power to grant licenses.

**THE COURT:**  So I think the question is:  At some point are enough rights given away, whether it's exclusive or non-exclusive or close to exclusive right to license, the right to use, et cetera, et cetera, et cetera, at some point can those sort of accumulate and add up to an effective sort of de facto transfer of ownership sufficient to convey standing?

**MR. ZANSBERG:**  Only if they are exclusive. Otherwise, every non-exclusive licensee has exactly the same rights that Minden has.  Minden is nothing but a non-exclusive licensee.

And that's the difference -- that's why Section 101 expressly declares that ownership can be conveyed in multiple ways.  But with respect to licensees, it must be exclusive.  It expressly excludes non-exclusive licensees.

The visuals unlimited arbitrator decision that Exhibit 5 to my declaration in support of Wiley's motion for summary judgment says it extremely simply and clearly.  This is on Page 4 of Order No. 5, again, Exhibit 5.

The arbitrator says:

"Section 501(b)of the Copyright Act confers the right to sue on owners.  Section 101 makes clear that a transfer of copyright ownership does not include a non-exclusive license.  It follows that a non-exclusive license of a Section 106 right cannot be -- a non-exclusive licensee of a Section 106 right cannot be a copyright owner."

There is nothing in these provisions and in these contracts, and Minden has conceded, that does not have the exclusive right with respect to any of the 106 rights its claiming it was granted in these contracts.  It and the photographs themselves retained the right to license these photographs.

The Carr Clifton agreement makes that abundantly.  I attached it as an exhibit --

THE COURT:  That's why I have thought the issue boiled down to in this case that we're no longer dealing with the assignment agreements and the question of exclusive license or not because that's already been disclaimed.

The question that we reserve, that's been briefed, is whether the agency agreements convey an ownership interest, not a licensing, exclusive licensing, and that's where you say labels don't matter, but, you know, there is an express provision.  It's not just a label that says ownership is

retained by the photographer.

And you have subsequently conduct that suggests that transfer had not been interest had not been conveyed.

And then you have the third requirement, as I understand it, that to be co-owners and, therefore, have standing -- both have standing to sue, you have to have independent and equivalent powers to exercise that right.  If they are not co-equal and one has more power than the other, that suggests something less than an ownership, than a tenancy in common.

And here the fact that the agreements required in some instances Minden to obtain permission, you may say:  Well, that's in limited circumstances for certain kinds of things.

It's still unequal and the requirement that all -- Minden return the original back to the photographer, it certainly seems to run counter to the idea that these were coequal owners.  That's the problem I have.

If we're not on the exclusive licensing track, we're only on the co-ownership traffic as putatively conveyed by the agency agreement -- we got the term of the agency agreement itself both substantively and, as you say, labels.  I'm having trouble to -- finding that the indicia necessary to state -- to show that there has been a transfer of a co-ownership.

        MR. SEIDMAN:  We would say we agree that non-exclusive licensees do not acquire an ownership interest.  And so all of the quotes from the cases involving non-exclusive

licenses and non-exclusive licensees lacking standing, we're 100 percent on board with.  That doesn't answer our question here at all.

The idea that the ownership has to be not just co-ownership, but has to be coequal, is one that we would push back against.

Minden, within the areas of assigned interest, actually had more powers to act than the photographers.  Minden had in his sole discretion the right to issue licenses, to negotiate them, to price them without any consultation with the photographer, his supposed coequal owner.  Minden was, as I said before, in the superior position because the photographers wanted to convey those rights to him.

Minden did -- had powers that you wouldn't -- you wouldn't have residing in a non-owner, as the Copyright Act defines ownership.

Ownership is the right to do what 106 says an owner can do.  There is even a provision in this agreement that says that if there is a license that's issued by the photographer that is inconsistent with the terms of the agreement, the photographer has to pay to Minden 100 percent of the gross proceeds for that license.  That sounds like an accounting among shared owners, co-owners.

THE COURT:  Well, that may be during the term of the -- you could argue that during the term of the agreement,

the agreement is for -- typically for five years at least.  The one I'm looking at is a five-year agreement.  And at the end of that MP&A:

"...must immediately cease all activities with respect to licensing of any image, except as otherwise provided in this agreement."

Again, if you're an owner, you're an owner.  And you're not an owner -- there is a difference between a lease and a license, which is for a temporary period, occurs with an ownership, which I assume if you were truly co-tenants, you would -- your right would exist in perpetuity or upon some other termination right, and you would get paid fair market value or some kind of valuation of your ownership interest, as you would in any co-tenancy.  You can't just say:  Oh, it's the end of that five years.  You're no longer a cotenant.

**MR. SEIDMAN:**  Your Honor, that's why resort to the Copyright Act is necessary here, because we're not dealing with general common law principles of ownership.

101 says:

"A transfer of copyright ownership is an assignment, mortgage, exclusive license or any other conveyance, alienation or hypothecation of a copyright, or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not inclusion

of a non-exclusive license."

So the Copyright Act is telling us, no, an owner doesn't have his ownership interest negated or diluted for purposes of Copyright Act standing because the ownership is limited; limited in time, limited in place of effect. And it can be limited in that you only get a slice of the 106 rights. None of that --

THE COURT: How do you distinguish a transfer of ownership from a license? Even an exclusive license? Which you disclaim, I know, theoretically. There were exclusive licenses. There are cases that say even an exclusive license is not enough to convey standing, to transfer ownership.

Where do you draw the line? What makes what you just said about this alleged transfer of ownership different from an exclusive license?

MR. SEIDMAN: Well, if "exclusive license" means that only Minden can do it, then we're not claiming that, as I said before.

Now, I don't think that has the attraction that Wiley gives it. The *Nefal* case, *Nefal versus Carter*. It's a case from the Central District, has a very good analysis of that issue on Page 1138-1139. *Nefal* is 540 F. Supp. 2d 1128.

THE COURT: All right.

MR. SEIDMAN: You'd think that the notion of being a co-exclusive licensee would be an oxymoron because as soon as

somebody else has the so-called exclusive license, then how could you -- how could it still be exclusive?  And that does make sense logically and grammatically.

THE COURT:  I'm struggling with at what point -- what's the difference between an exclusive license and co-ownership?

MR. SEIDMAN:  Co-ownership can be by any means of conveyance.  It doesn't have to be by a license.  It doesn't have to be exclusive.  It just has to give you the right to exercise 106 rights, and just a slice of them.

THE COURT:  Why wouldn't an exclusive license be that?  I mean --

MR. SEIDMAN:  It would be.  An exclusive license would be that.

THE COURT:  But if you were to assume for the moment, arguendo, that an exclusive license, as some cases have held, is not enough to convey standing, what more would have to be shown to have that bloom into a transfer of actual ownership rights?  Besides the right to exclusively license, what other character or incidents of ownership are there that convert or put it over the line?

MR. SEIDMAN:  I don't agree that an exclusive license comes up short for providing standing.  And I'm not sure what the cases would be that would say that.  I'm not sure Mr. Zansberg would assert that here.

MR. ZANSBERG: Your Honor, I'm also -- I'm willing to concede that an exclusive license agreement does convey standing under Section 101. It's among the incidences of copyright ownership so declared in the 1976 act.

It's the difference, really, between non-exclusive licenses and a transfer of ownership that is at issue here and what's lacking is the indicia of ownership, since it's quite clear that the -- as I said earlier, the 106 rights to use, reproduce and exploit copyrighted works can be conveyed without -- as a license, without transferring title to those rights. And that's exactly what happened here.

Minden was given the right, permission, to use the -- and to exercise Section 106 rights, non-exclusively. And it wasn't made a co-owner of the copyright. It was allowed to issue sublicenses. It was a licensing agent, like many of the other licensing that have been held to be non-exclusive licenses.

It's fairly unremarkable. And there's just nothing in these agreements to answer your Honor's question --

THE COURT: What made the rights here non-exclusive, the licensing rights?

MR. ZANSBERG: The fact that the photographers themselves retained the rights, as Minden as conceded, as it must, to license these photos and to make uses of these photos at the same time in the same territory.

I mean, *Nefal versus Carter* talks about breaking up the

bundle of rights and allowing transference of individual sticks for individual -- for periods of times and in different locations.

But what's clear is that the owner of the bundle of sticks and of 106 rights cannot convey the right to more than one party to make use of the exact same photos in the exact same territory in the exact same time and convey an exclusive license.

THE COURT:  So is it, for instance, the provision -- I'm looking at the *Candacini* licensing agreement 2.5.2:

"Photographer may use images for personal promotion and other personal projects, as well as licensing to third parties, provided any such use does not conflict with the licenses granted by MP&A."

Is that one of the examples of the non-exclusivity?

MR. ZANSBERG:  Yes.  And, you know, as in 2.7.  I don't know if it's in the agreement you have in front of you, because I don't have that one.  But for *Carr Clifton*, it reads:

"The photographer shall have the unlimited, unrestricted right to license the images throughout the territory, through this -- his office, without the agency's permission, except as for provided for in this agreement."

THE COURT:  This one says they can do so if the image is not identical to essentially or essentially similar to

images.  That's the *Candacini* one.  That's a little different.

MR. ZANSBERG:  And, again, Minden has conceded that these rights are not exclusively granted, were not exclusively granted to Minden.

Again, the word "exclusive," I will agree with counsel, that it's used loosely in various provisions of the Copyright Act.  But the exclusive rights under Section 106 do not mean exclusive to one owner.  There can be co-owners.  There just weren't.  That's not the case here.  But there can be co-owners of those exclusive rights.  They are not exclusive meaning that only an owner can exercise those rights, because licensees can, too.

So contrary to Minden's explanation of what exclusive means, it doesn't mean those are the rights exclusively of the owner.  Those rights are also allowed to be exercised by licensees.

What "exclusive rights" means in Section 106 is the right to exclude others to -- and that's what "exclusive" means.  And there can be non-exclusive licenses that allow a copyright owner or a copyright licensee to exclude others from the use for which the license is issued.

THE COURT:  What about the grant in these agency agreements to Minden to use the images -- again, I'm reading from this one.  It says "to create derivative media, products and programming."

**MR. ZANSBERG:** And any license -- any copyright owner, as the photographers are here, can license any -- one or more entities to create derivative works. That's a license. It's not a grant of copyright ownership.

**THE COURT:** Well, that is one indicia of 106, one incidence under 106, not to prepare derivative works or, as you're saying, that's -- Minden doesn't have the exclusive right to prepare derivative --

**MR. ZANSBERG:** Exactly. To grant the exact same rights under 106 to multiple entities is just a logical, legal nullity to claim that that is an exclusive right, an exclusive license.

Minden has conceded it doesn't have an exclusive license. These are all licensing terms, not transfer of copyright ownership, which is expressly retained throughout this agreement.

**THE COURT:** Let me ask one last question: Absent an exclusive licensing right, is there anything more that can be conveyed that would transform this into a co-ownership?

Can you think of anything, if this agreement had included XYZ, what would that XYZ be, for example?

**MR. ZANSBERG:** In our summary judgment brief we cited cases that have more express intent to transfer right and title to the images, or to the copyright itself, or to whatever particular Section 106 right is being transmitted.

There is case law that says there has to be a recordation of that in the Copyright Office as well.  I don't think that's the Copyright Office's position, but in any case, there has to be an express -- as the case law makes clear, in order to protect copyright owners, we require that contracts conveying copyright ownership expressly indicate an intent to do so.  It has to be an express transfer of ownership, says the *Effects Associates, Inc. versus Cohen* case.

There is simply nothing approaching, resembling or in any way, shape or form suggesting an express transfer of ownership.  The case law is clear that allowing third parties to use, and to even authorize them to allow others to authorize use, is a license.  It is not a transfer of ownership.

And that's what's missing here, is that not only is there a lack of any express transfer of ownership, to the contrary, there is a very unequivocal express retention of all such ownership.

**THE COURT:**  Why doesn't -- and maybe this is a simple question.  I just don't understand the context.

Why isn't the simple solution here to join the photographers?

**MR. SEIDMAN:**  There are 34 photographers.  Actually, three couples, married couples.  So there's actually 37 photographers creating 34.  Well, creating of the 90 some images, 105 licenses, and they are scattered from Japan to

Alaska to Ecuador and all around the United States.

So as a practical matter, having them ratify this action would be fine, but having them named as plaintiffs would basically not be feasible for those who are remote. And that's what Wiley's strategy here is.

They are not concerned about Minden taking advantage of the photographers. The photographers and Minden are completely on aboard with this case, as you can see from the assignments that have been attempted to be --

**THE COURT:** But if, in fact, the assignments and the agency agreement are not -- were found not to be effective, that doesn't mean that this -- rights are unenforceable. The question is: Who is the right party?

And it may be inconvenient or less convenient, but there is a proper party. Somebody is an owner.

**MR. SEIDMAN:** Right. And we would ask that -- well, let me say it this way.

Minden withdraws his request that Rule 17 be applied in this case. Rule 17 requires the Court to, after an objection is made, that the real party in interest isn't in court, that the real party in interest be given an opportunity to join in the litigation. We're waiving that right.

Minden wants this Court's answer as to whether it has the right itself to enforce the violations of the licenses that Minden itself issued in Minden's name and with the authority

that the stock photo agreements give Minden.  And so it would be -- that's what we're requesting, not kind of an up or down decision on whether Minden is a party withstanding under the Copyright Act.

**THE COURT:**  And not seek or allow the opportunity to obtain joinder or substitution or ratification of Rule 17?

**MR. SEIDMAN:**  Unless ratification means that Minden is maintained in the action and the other parties aren't required to be joined as plaintiffs and compelled, I assume, then Wiley would ask that they be compelled to come to this district to be deposed, et cetera.  So, right.

**MR. ZANSBERG:**  Your Honor, if I may address this last point?

Counsel disparages Wiley's apparent strategy here.  And I would suggest that counsel's chagrin may be more appropriately directed at the Congress of the United States.

The parties don't have the right to create standing under the Copyright Act, whether they choose to do so by contract or by sham agreements that the court -- this Court and Judge Alsup -- have found to be nothing but sham agreements.  Try it as many times and again and again as Minden is desperately trying to do in order to aggregate claims from photographers who quite clearly do not want to come and appear before this Court to exercise their own rights despite the numerous communications and contracts and mandated agreements between

Minden and the photographers.

Aside from the statute of limitations issue, for them initiating their own new cases, it's quite clear they've had that opportunity since this lawsuit was filed in September of 2012.

As the *Eden Toys* case said in the Second Circuit, copyright owners are not allowed to ratify third party's standing to sue on their behalf.  It said so in footnote three of that decision.

And as Judge Orrick recently held just last month in the *Muench Photography versus Pearson* case in this courthouse, it's untimely for a party to wait so long, including hereafter the close of phase one discovery and after the time to amend a complaint to add any parties, when it's quite clear, as Minden just indicated, they have no intention of doing so.

**THE COURT:**  All right.  I will take the matter under submission.  And I noted plaintiff's point about waiving the Rule 17 option here.

**MR. SEIDMAN:**  Thank you, your Honor.

**THE COURT:**  All right.  Thank you.

**MR. ZANSBERG:**  Thank you very much, your Honor.

(Proceedings adjourned.)

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Monday, April 14, 2014