**Pages 1 - 25**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

|  |  |  |
|---|---|---|
| MINDEN PICTURES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. C 12-04601 EMC |
| | ) | |
| JOHN WILEY & SONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

San Francisco, California
Thursday, April 10, 2014

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

HARMON & SEIDMAN LLC
101 South 3rd Street - Suite 265
P.O. Box 3207
Grand Junction, Colorado  81502
BY: **CHRISTOPHER SEIDMAN, ATTORNEY AT LAW**

HARMON & SEIDMAN LLC
485 Dorset Street
Cambria, California  93428
BY: **GREGORY N. ALBRIGHT, ATTORNEY AT LAW**

For Defendant:

LEVINE, SULLIVAN, KOCH & SCHULZ LLP
1888 Sherman Street - Suite 370
Denver, Colorado  80203
BY: **STEVEN D. ZANSBERG, ATTORNEY AT LAW**

Reported By:       Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
Official Reporter

**Thursday - April 10, 2014**                                    **1:37 p.m.**

                                **P R O C E E D I N G S**

                                   **---000---**

THE CLERK:  Calling case C 12-4601, Minden Pictures versus John Wiley & Son.

Counsel, please come to the podium and state your name for the record.

MR. ZANSBERG:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. ALBRIGHT:  Good afternoon, Your Honor.  Gregory Albright, Harmon Seidman, appearing for the plaintiff.

THE COURT:  All right.  Thank you, Mr. Albright.

MR. SEIDMAN:  Good afternoon, Your Honor.  Christopher Seidman appearing for Minden Pictures, Inc.

THE COURT:  All right.  Thank you.

MR. SEIDMAN:  Thank you.

MR. ZANSBERG:  And good afternoon, Your Honor.  Steve Zansberg on behalf of John Wiley & Sons, defendant.

THE COURT:  All right.  Good afternoon, Mr. Zansberg.

So we're on for defendant's motions for attorney's fees in this matter after I granted summary judgment.

And there's a threshold question here about jurisdiction. As you know, the *Righthaven* case talked about where there's not statutory standing, that a court, therefore, lacks Article III jurisdiction.  And one could argue that just because you don't

have statutory standing because of the way the statute is fashioned, that doesn't mean you don't have injury within the meaning of Article III, and that what the Ninth Circuit has done is conflate statutory and constitutional standing.

But there are other decisions from the Ninth Circuit in similar contexts which have held similarly that where there is some bar to lawsuits, such as the Rooker-Feldman doctrine, or no standing under ERISA, no standing under a tax claim case, that that bars awarding fees to the prevailing party.

And, so, what do I do with that?  I mean, I don't know if I agree with that analysis.  Indeed, I think the Seventh Circuit in the *Hyperquest versus Inside Solutions* has held to the contrary, and said there is a distinction between statutory standing and constitutional standing; and even though a party may not have a private right of action or may be barred by some aspect of some statutory requirement, that does not obviate constitutional standing, therefore, the Court has jurisdiction to award the prevailing defendant fees.

That sounds right to me, but what do I do with this precedent in the Ninth Circuit?

**MR. ZANSBERG:**  Well, Your Honor, we didn't cite as a supplemental authority but just to the bring to the Court's attention, a recently issued decision from the United States Supreme Court addresses these very same issues and seems to side very much with the Seventh Circuit view that Your Honor

just mentioned.  It's the *Lexmark International, Inc., versus Static Control Components* case.  It was issued after briefing was closed on the defendant's motion on March 25th of this year.

And in that case the Court, and particularly in Footnote 4 of the case, draws a distinction between constitutional Article III standing of the power of a court to adjudicate claims and the issue of statutory standing, and it sort of disclaims its former use of the word of "prudential" standing.

It makes clear that statutory standing is a question of really going to the merits of the claim.  Does the -- is the plaintiff a person -- much like the Seventh Circuit said in *Hyperquest*, the question is who can bring a claim, not does the Court have authority to decide any claims under a particular statute -- statutory scheme.

And here, in fact, the Court has previously noted in this very case that to some extent the issue of standing is also intertwined somewhat with the elements of the plaintiff's claim because the claim is ownership of a copyright -- copyrighted work, and the second element being copying without permission.

So the fact that this plaintiff lacks standing, and the Court so held in the summary judgment context as opposed to on a 12(b)(1) motion to dismiss for lack of personal jurisdiction, shows that there isn't statutory standing but that the Court clearly still has jurisdiction after that -- issuing that

ruling to determine collateral matters, including sanctions, including holding this hearing, all kinds of matters that are not germane to the merits of a claim.

And as we noted in our briefing, not only has the Supreme Court of the United States said so outside of the context of copyright -- and, by the way, the *Lexmark* case I just cited is not a copyright case but a false advertising case under the Lanham Act.

But, in any case, this Court in the AF Holdings case and the Ninth Circuit has on at least two occasions affirmed award of attorney's fees to defendants in copyright cases following a finding of lack of standing.  Both in the *Cadkin versus Bluestone* case, which is completely unaddressed, I -- Minden in responding to our --

**THE COURT:**  That's an unpublished decision, though; correct?

**MR. ZANSBERG:**  The Ninth Circuit's decision is, yes, unpublished.

**THE COURT:**  Right.

**MR. ZANSBERG:**  And I believe the published opinion is *Maljack*, but --

**THE COURT:**  That preceded *Righthaven*.  That was a 2000 -- 1996 case and *Righthaven* was just decided last year.

**MR. ZANSBERG:**  Right.  But I don't see *Righthaven* as suddenly changing the law.  And, in fact, we cited another

*Righthaven* case decided before the Ninth Circuit but, in fact, it was affirmed in the very *Hoehn* decision in *Righthaven*, the *DiBiase* case where attorney's fees were also awarded.  In fact, in the *Hoehn* case they were awarded.  Subsequently a receiver was appointed on behalf of *Righthaven*.

So the *Righthaven* cases -- and the Ninth Circuit didn't disturb any of those awards of fees nor did it do so in *Cadkin versus Bluestone*.

**THE COURT:**  But your position is, nonetheless, even if the Ninth Circuit law is read as I initially read it with *Righthaven*, that that has now changed with the *Lexmark* case?

**MR. ZANSBERG:**  Well, I don't know that the *Lexmark* case -- I just don't think -- I think the courts have, as Your Honor's pointed out, confused these two notions of subject matter jurisdiction under Article III.  And I think the *Hyperquest* case -- actually the District Court case is even more articulate than the Seventh Circuit on this point that the question of standing is a question of who may sue, whether or not a particular plaintiff can bring a claim under a statutory scheme.

And while the courts refer to it as a matter of subject matter jurisdiction, it's very different from questions of does the Court have the authority to resolve claims brought by other plaintiffs.  Here is a very good example.  The photographers in this case could -- the photographers whose works are at issue

in this case I should say -- have standing.  The Court clearly has jurisdiction to resolve their claims.

And the Court continues to have jurisdiction to address issues in this case, notwithstanding the fact that Minden Pictures does not have standing to bring copyright claims.

The photographers, if they had joined the suit, and they've now disclaimed any interest in doing so, that they clearly have standing and the Court clearly would have jurisdiction to resolve their claims.

The question of the Court's subject matter jurisdiction continues, and it's clear, as in the *Cadkin versus Loose* case, which Your Honor cited in the -- I'm sorry -- the *Lang versus Morris* case, it's clear that when the Court lacks jurisdiction over a defendant, lacks personal jurisdiction to adjudicate claims against a defendant but that defendant can be sued by the same plaintiff on the same claim in another Federal Court, the defendant isn't a prevailing party because it still is subject to suit by the same plaintiff on the same claim in another Federal Court.

Here, in contrast, as in *Cadkin versus Loose*, the Court says that a defendant is the prevailing party following the dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against that defendant in Federal Court.

Here Minden is precluded from bringing these claims, these copyright claims, against Wiley in any Federal Court; and the Court has merely held, as a result of summary judgment ruling, that Minden lacks standing.  It is not an appropriate plaintiff to bring these claims, but that doesn't divest this Court of its jurisdiction to decide collateral issues, including whether Wiley should be awarded its attorney's fees under 17 U.S.C., Section 505.

THE COURT:  All right.  Let me hear the response, particularly to the *Lexmark* case which drew a distinction between Article III standing and the statutory standing.

MR. ALBRIGHT:  Well, first of all, *Lexmark* was not a copyright case, and what we are discussing is a footnote in the case.  *Lexmark* --

THE COURT:  But the principle is the same, statutory, whether it's Copyright Act or whether it's the Lanham Act.  Why would it make any difference from a constitutional point of view?

MR. ALBRIGHT:  Well, I believe it does make a difference when we're talking about ownership and a statute that at the same time creates the rights and identifies the class of persons who are entitled to bring the claim, and the Court has not had -- didn't consider in that footnote what the situation is when you have a plaintiff who is not the owner of the rights created by the statute.

And the way I look at it is, although there is a distinction between Article III jurisdiction and the question of whether the plaintiff before the court can demonstrate injury under Article III, there's a difference between that and what a plaintiff must prove to prove up its case.

In a copyright case, those substantially overlap; and, so, even though it can be viewed as an element of the cause of action, at the same time when the plaintiff is not an owner and doesn't have standing, it raises Article III concerns.

And I understand that there may be room for a debate about that, but I think the Court's job has been made easier by the fact that *Righthaven* decided the question; that when a copyright plaintiff is not an owner and the Court determines that there's no subject matter jurisdiction, that raises Article III concerns.

And I think it's somewhat ironic that Wiley now wants to take a different position.  Earlier in this case it rather emphatically stated -- this is Document 44, Wiley's reply in support of the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) -- this is at page 10 in the ECF header, page 10 of 21, page 5 down here in the brief:
(reading)

    "The subject matter jurisdictional facts -- i.e.,
    does Minden have standing -- are straightforward and
    wholly unrelated to the merits of the copyright

infringement action.  It's necessary to address the question of standing at the earliest juncture under Rule 12(b)(1) motion."

Citing *Warren*, which is an earlier case that also said that when a copyright case -- a copyright plaintiff doesn't have standing, there's no subject matter jurisdiction.  You have to decide that based on facts as they exist when the Complaint was filed, and that this is a threshold jurisdictional issue.

Not only did Wiley say that earlier in this case, but Wiley is a leading member of the American Association of Publishers which went out of its way to take a position in the *Righthaven* case.  It wasn't a party.  It didn't have to go in there and say anything.  It volunteered and asked the Ninth Circuit to make it the law that when a copyright infringement plaintiff is not an owner of the copyright, that means there's no Article III jurisdiction.

*Righthaven* vacated the District Court's decision on the defendant's fair use defense.

Our position --

**THE COURT:**  What do we do with the *Maljack*, or however you pronounce it, *Productions* case, which seemed to hold the contrary awarding attorney's fees?

**MR. ALBRIGHT:**  Well, it's a well-established principle of law that a case is not authority for the proposition that it

didn't consider.  So that is the case regarding *Maljack*, which didn't consider the question of whether there was a jurisdictional impediment to making an award of attorney's fees.  It just didn't consider it.

That was also the case in *Cadkin versus Bluestone*, which the Court correctly noted is not published and is not precedent; and, by the way, is a very abbreviated decision that didn't address the question of attorney's fees.

This Court also did not address the question in *AF Holdings*.  We don't fault the Court for that.  In that case the parties had agreed that the defendant was the prevailing party and, so, went on to the question of whether attorney's fees should be awarded.

But cases that have not considered the question, they're not contrary authority at all.  *Righthaven* is published recent authority, and we submit it's on point.

MR. ZANSBERG:  If I may respond to that, Your Honor?

THE COURT:  You can respond, then I want to talk about the merits.

MR. ZANSBERG:  Great.

First of all, I agree that cases that don't resolve a particular issue should not be cited as standing for the proposition cited.  *Righthaven* says nothing about the Court's authority to decide collateral issues like award of sanctions, award of attorney's fees.

*Righthaven* does not purport to overrule the Supreme Court's 1990 decision of *Cooter & Gell versus Hartmarx* cited on page 1 of our reply that says it's well established a Federal Court may consider collateral issues after an action is no longer pending, including the imposition of costs, attorney's fees, contempt citations.  That is a collateral issue.

*Righthaven* said --

**THE COURT:**  But the source of those sanctions lies outside the Copyright Act.  So if you're talking about Section 1919 or sanctions under the inherent power of the court or something else, they emanate from a different place.

And, so, here the only substantive basis for recovery is Section 505 that was asserted; right?  So that's the only basis.

Had you moved under a different section, there are cases and the Ninth Circuit recognizes there are exceptions to the principle, but we're not in those exceptions because you only moved under 505, so....

**MR. ZANSBERG:**  Again, I would respectfully point the Court to not just the footnote but the text as well of the *Lexmark* decision for the proposition that statutory standing is different than Article III standing, and that the court retains jurisdiction to issue attorney's fees award.

And particularly in light of the purposes of the Copyright

Act, which I'll transition into the merits, since that is the primary focus of the Court's discretion in an award of fees, would it further the purposes of the Copyright Act to allow the Righthavens and AF Holdings and Mindens and DRKs, et cetera, of the world to bring copyright cases knowing full well they lack standing after a series of rulings have made it unequivocally clear they lack standing and to impose the type of costs that Minden Pictures imposes upon Wiley here?

**THE COURT:**  Well, I guess there's a question about whether or not the Minden's position was objectively unreasonable is one of the criteria.  And as you saw from my ruling on the merits, we had to go through a lot of stuff to get there, and it was not like it was so crystal clear that it didn't require any analysis.

I think this whole question about agency agreements, which arguably are different than just regular imperfect copyright assignment where there is a transfer of rights to license, not just to do, power to authorize, et cetera, et cetera, it seemed to me that required some analysis; and I'm not sure that, you know, at some point some other Court might find differently.

I mean, I agreed with you on the merits, but the question is:  Was it objectively unreasonable to argue the contrary? And I'm not so sure it was objectively unreasonable.

**MR. ZANSBERG:**  With all due respect, I agree that the Court's well-reasoned and lengthy opinion does not suggest that

it was a close question or that there are reasonable arguments on the other side.  I had the unfortunate luck of being on the losing end of a 64-page Fourth Circuit Court of Appeals decision that began by saying, "Nothing could be simpler."

And, so, I don't think the length and eloquence of the analysis necessarily detracts from the fact that Minden's position, particularly with respect to the agency agreements, that it was a co-owner or beneficial owner of the photographic works at issue in this case, was objectively reasonable.

As the Court found, there wasn't any wording whatsoever in those agreements that suggested any transfer of copyright ownership.  The most they extended was a nonexclusive licensing or agency agreement to issue nonexclusive licenses.  And the only expression in the agreements that talked about copyright ownership very expressly and unequivocally retained all copyright ownership in the photographs of the photographers.

The Court did address the myriad alternative theories that have evolved over time that Minden Pictures has presented, including beneficial ownership because it is a licensing agent. Minden has yet to cite and cannot cite a single case from any jurisdiction finding that a licensing agent, in a nonexclusive licensing position has acknowledged it has, is a beneficial owner.  Not a single authority from any jurisdiction.

So the fact that the Court had to address the myriad frivolous, specious arguments that Minden has presented doesn't

detract from a finding that those positions are objectively unreasonable.

As we noted, one of the cases that Minden cited in its opposition to the attorney's fees motion, an unreported District Court case, on appeal the Ninth Circuit said there was no language whatsoever in the contract at issue that could plausibly give a basis for the plaintiff's opinion -- position, and that is exactly on all fours with the situation before the Court here.

And Wiley was put to the burden of going through months of discovery and bearing the costs of its attorney's fees tracking down and responding to arguments that ultimately had absolutely no basis in fact or in law.  Now, if that's not objectively unreasonable, I don't know what is.

And then with respect to the other part of the case, the earlier ruling, Judge Alsup had already dismissed the very same after-the-fact and -- or with-an-eye-towards-litigation-bare-license-to-sue agreements that Minden and its counsel had gone through several iterations trying to manufacture standing, and they were squarely rejected.

**THE COURT:**  What did Judge Alsup do on fees?

**MR. ZANSBERG:**  They were -- they were denied in that case because they were filed contemporaneous -- they were requested contemporaneously with a summary judgment motion.

And as we pointed out in our briefs, we're very

differently situated.  Judge Alsup was the first judge in this courthouse to squarely reject those.  Minden persisted in presenting these claims and imposing costs upon Wiley in the face of that; and then we've cited numerous authorities that say once a Court has rejected a party's legal positions, it's on notice and it proceeds at its own peril.

THE COURT:  Well, once a District Court -- I'm not sure that is quite as powerful when you're talking about taking a position that is contrary to a District Court's decision, which is not binding on another District Court as opposed to a Circuit Court decision.

MR. ZANSBERG:  That's true.  There are cases, though, I believe we've cited some, that point out when another U.S. District Court has squarely rejected a party's claims.  I can track those down.  I know they're in our briefs.  I just don't have them.

THE COURT:  What about the fact that, notwithstanding your victory on the question of standing, that it was not a substantive ruling and did not rule out exposure to other suits by the acknowledged owners, the individual photographers, for instance, so this is kind of a procedural victory, not the kind of sweeping substantive victory that would be -- that would have a higher mark of success than what you obtained here?

MR. ZANSBERG:  Well, again, the standard is:  Does the -- I don't think there can be any serious argument,

notwithstanding the fact that an argument has been made, and will be made shortly, that Wiley isn't a prevailing party here. It clearly cannot be sued by Minden in any Federal Court on these claims; and under *Cadkin versus Loose*, that is the determination for who is the prevailing party.

The question is the degree of success that Wiley enjoyed in this litigation, and it is complete and total. Not only can Minden not bring any claims against Wiley based upon the copyrighted works that it purports to be the co-owner or owner of, in this action or any other action, it has disclaimed that the photographers will do so. It withdrew its request in its reply to -- or response to our motion for summary judgment that it first raised to have the photographers ratify its standing or purported ownership interests. And then at oral argument counsel standing beside me withdrew even that and stated unequivocally that the photographers have no interest and will not bring suit against Wiley.

So the claim that Wiley faces litigation by third parties in some other action based upon these photographic works doesn't really factor into the Court's determination of the appropriateness and amount of a fee in this case where Wiley has completely prevailed. It faces no exposure from this plaintiff, much less the other photographers, the rightful owners of these works, based upon counsel's representations anyway; but the only issue is whether or not Wiley prevailed

against Minden Pictures, Inc., and it did 100 percent.

THE COURT:  All right.  Your response?

MR. SEIDMAN:  Your Honor, we did not at the prior hearing speak for all of the Minden photographers in saying that they weren't going to bring claims.  As a practical matter, I don't know how feasible that would be; but if that's in the transcript, I'd be very surprised and it would be a statement we would not be able to make.  There are 37 photographers scattered all around the world.

The idea that Wiley has prevailed on the merits because it cannot be sued by Minden in any Federal Court is also incorrect.  Wiley can't be sued by Minden in any Federal Court on the agency agreements and on the assignments that were in existence at the time this case was filed.  And if Minden were to do that, he would be presenting a frivolous case; but that doesn't mean that Minden cannot cure the deficiency and obtain standing.

The photographers after a couple decades, many of them are not only business associates of Minden but friends.  If one were to die and he willed his photographs and copyrights to Minden, Minden then couldn't come in with standing?

The claims aren't resolved on the merits, not even on the representation made here today that Wiley cannot be sued by Minden in any Federal Court on these claims for the rest of time.

As far as the photographers bringing the action, well, yes, you have indicated in your order they're free to bring these actions.  So, obviously, there hasn't been an adjudication on the merits of the claims; and that gets us to, I think, something that's been somewhat overlooked, underemphasized in the briefs.

We talk about the factors that you're supposed to consider -- objective unreasonableness, frivolousness, deterrence, compensation, motivation -- but those are all factors that are supposed to be applied in a context, the context of exercising discretion to accomplish a particular Section 505 purpose, not a general idea of controlling the behavior of litigants in your courtroom.  You have other sources of authority to do that.  But to, as the Supreme Court put it, to further the Copyright Act's underlying purpose, which is, quote, "to encourage the production of original literary, artistic, and musical expression for the good of the public."

And the *Fogerty versus Fantasy* case, the Supreme Court case which changed the rules on this, is very interesting on the facts because in that case the plaintiff below was not John Fogerty, you know, the rock and roller.  It was Fantasy. Fantasy owned the copyrights to a song that Fogerty had written in 1970, "Run Through the Jungle."  And as is common, John Fogerty assigned the rights to that song to Fantasy's

predecessor and then Fantasy got the rights.

Fourteen years later John Fogerty writes another song, "Old Man Down the Road"; and Fantasy says, "Well, wait a minute. That's our song. That's 'Run Through the Jungle.' We own that song. It's the same song. You just changed the words. And, so, we're going to sue you for copyright infringement, and we are going to prevent you from disseminating and profiting from your new song, 'Old Man Down the Road.'"

And, so, when John Fogerty resisted that claim as the defendant -- and, by the way, the songs aren't really that similar -- he --

THE COURT: I would agree with you on that.

MR. SEIDMAN: -- he prevailed, but then went to get his attorney's fees; and the lower court said, "No attorney's fees for you because Fantasy's arguments weren't frivolous." And as the plaintiff, that was the prevailing standard for deciding who gets attorney's fees.

And the Supreme Court said, "No. You've got to put these plaintiffs and defendants on equal footing. You've got to -- you've got to treat plaintiffs and defendants alike for the purpose, however, of determining if attorney's fees will further the Copyright Act's primary objective."

THE COURT: Well, but it begs the question. You say the purpose of the Copyright Act, and one side will say, "Well,

anything that would encourage and protect the rights of the creator ought to be construed liberally."  In fact, that's the whole purpose of the Copyright Act, like intellectual property, incentivize creativity, et cetera, et cetera.

But the other side would say, "Well, on the other hand, the purpose of the Copyright Act is not to allow frivolous claims, claims that are clearly not allowed by the statute and that has the effect of being contrary."

I mean, frankly, I don't know how helpful that is.

**MR. SEIDMAN:**  Well, but that's -- but it's not a purpose of the Copyright Act.  We're not in the British rule where you win --

**THE COURT:**  Well, but you're saying the only purpose of the Copyright Act is to protect the creator; therefore, everything should be construed in favor of the party suing the infringer, the alleged infringer.

**MR. SEIDMAN:**  Well, but if the defendant in the case is John Fogerty and as a result of winning, he then frees up that creative work that would otherwise have been squelched and is now able to, not just for himself and that song, but allow the creation of works within the swamp rock genre, as the Court put it, then he is accomplishing, even though he's the defendant in the case, by resisting the copyright infringement action what the Supreme Court says we're supposed to look to see is happening:  To encourage the production of original

literary, artistic, and musical expression for the good of the public.

So when we look at what Wiley has accomplished here, it hasn't really done anything that's furthered the purposes of the Copyright Act as the Supreme Court has told us that means.

And a couple more points about Fogerty. It was pointed out on remand and the award of attorney's fees, Fogerty was a defendant author and prevailed on the merits rather than on a technical defense; such as, the statute of limitations, laches, or the copyright administration requirements.

THE COURT: I understand. That's why I raised the point about there's a difference. One factor is did you get a substantive ruling that's dispositive or did you get a technical ruling. You know, so we've had this discussion. I'm aware of that.

MR. SEIDMAN: The other factor they felt was necessary to mention was that Fogerty was not an impecunious plaintiff; and, so, the idea of chilling wouldn't really enter into the picture.

THE COURT: All right. Well, let me ask Mr. Zansberg two questions, and then I'm going to have to take this under submission.

What has Wiley accomplished that furthers some purpose of the Copyright Act here; just preventing frivolous suits, is that all?

MR. ZANSBERG:  Well, if that were all, that might well be enough.  I mean, according to counsel, the only prevailing defendant who's entitled to attorney's fees under its view of the purposes of the Copyright Act is a creative artist like John Fogerty.  I don't believe the case law supports such a limitation.

On page 16 of our brief we've cited -- our motion we've cited two cases -- *Love versus Mail on Sunday* from the Central District of California and *Omega S.A. versus Costco* -- which both show that when defendants are faced with frivolous and unsupportable claims, that it encourages future defendants to resist improperly motivated infringement actions that would deter the filing of such actions.

Wiley, I should point out, is a producer of textbooks that are enjoyed by millions of students throughout the world.

THE COURT:  Well, that is true.  It's also true that Minden is not just a troll, as you put it.  They're not just there simply to extort settlements and fees, and this sort of thing.  So, I mean, everybody's got a business purpose here.

MR. ZANSBERG:  It's true, everyone has a business purpose, and Minden's business purpose can go on uninterrupted. The issue before the Court now is whether or not what happened in this court over the last 16 months costing Wiley $175,000 was part of that business operation.

And in that regard, I would say that Minden's business

model in bringing this suit and its attorneys in bringing a whole series of other suits on behalf of photo licensing agencies in order to extract settlements by aggregating claims for copyright works they do not own is not that different from copyright trolls the likes of AF Holdings and Righthaven.

They are engaged in a business model to bring litigation the current state of the law does not allow them to bring. They may wish to change that law, and there is a forum for them to do that, but it's in Washington, D. C., not in the Northern District of California.

THE COURT: All right.  Let me ask you again how you distinguish *Righthaven* for the last time.

MR. ZANSBERG:  I distinguish *Righthaven* by saying it did not displace existing case law that says statutory standing is not a function of constitutional Article III standing.

THE COURT:  How did it not do that given its wording that talks about lack of Article III jurisdiction because of the plaintiff's lack under the statute to be able to assert sufficient ownership interest?

MR. ZANSBERG:  Because it was focusing on a substantive ruling on the merits of a fair use defense and having decided that the plaintiff lacked standing to bring those claims.

The Court --

THE COURT:  That it lacked Article III jurisdiction to

rule on that claim, isn't that what it essentially held?  It vacated that alternative holding?

**MR. ZANSBERG:**  Yes, on the merits of their copyright infringement claim.

**THE COURT:**  Because it lacked Article III jurisdiction according to the Court.  It didn't have to say that.  It could have just said, "Lack of statutory standing.  We don't even need to go there."

**MR. ZANSBERG:**  It's true, it could have; but I don't believe that displaces the Court's jurisdiction to continue to resolve related issues, including holding parties accountable for bringing actions that are contrary to purposes of the Copyright Act.

**THE COURT:**  All right.  I'm going to take the matter under submission.  I appreciate it.  Thank you.

**MR. SEIDMAN:**  Thank you, Your Honor.

**MR. ALBRIGHT:**  Thank you, Your Honor.

(Proceedings adjourned at 2:16 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, April 23, 2014

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter